# AFFIDAVIT

William T. Conrad, first being duly sworn, deposes and says:

1. I have been a police officer for approximately 16 years and am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) in Cincinnati, Ohio. I have attended the two week DEA Basic school and have participated in numerous narcotics investigations over the last four years.

2. The information in this Affidavit is based on my personal investigation and does not include all information obtained during this investigation, rather only that believed necessary to provide a legal basis for the civil forfeiture.

3. On February 17, 2014, agents from the DEA Cincinnati RO and detectives from the Cincinnati/Northern Kentucky Airport Police Department received a call from a ticketing agent with U.S. Airlines in reference to a traveler, Charles Clarke. The agent advised that when Clarke checked in for his flight from Cincinnati, Ohio, to Orlando, Florida, his checked luggage had a strong odor of marijuana. Det. Christopher Boyd and I responded along with my drug detection K-9 to the check-in area to examine the checked luggage. The K-9 examined two (2) pieces of checked luggage and gave a positive indication for the presence of the odor of narcotics on the checked luggage.

4. Det. Boyd and I then proceeded to the departure gate of Clarke's flight. Prior to arriving at the gate, Det. Boyd received a criminal history report for Clarke which

showed an arrest for robbery. At the gate area, Det. Boyd observed a subject matching the general description of Clarke. We approached the subject, identified ourselves as police officers, and asked for permission to speak with him. Clarke agreed; he was sitting in the gate area next to the jet-way, free to walk away at any time.

5. I asked Clarke where he was flying to and he stated Orlando, Florida. When asked the reason for his travel, Clarke stated that he lives in Orlando and goes to school at Central Florida State. I asked Clarke why he was in Cincinnati, and he stated that he was visiting relatives in the area and that he had been in Cincinnati since December, 2013. I advised Clarke that we belong to an interdiction group at the airport and asked him if he had any narcotics, weapons, or large amounts of currency on him or in his luggage. Clarke stated that he did have currency, but did not elaborate on how much or where it was located. I asked Clarke for consent to search his carry-on bag and person; he verbally consented to both searches. Det. Boyd searched of Clarke's carry-on bag while I continued to talk to him. Nothing of evidentiary value was found in the carry-on bag.

6. I asked Clarke where the currency was located and Clarke stated that it was in his pocket. I asked him to remove the currency so that I could verify the amount of currency. Clarke removed the currency from the right cargo pocket of his camouflage pants and placed it on a small table. The total amount of money found on Clarke's person was $11,000.00 in U.S. currency. I then asked Clarke if he was

employed and he stated that he was not currently employed. I asked him where the currency came from and Clarke stated that his mother is disabled from the military and that he receives money from the government because of that fact. Clarke refused to give his mother's name so that the information could be verified.

7. I told Clarke that his checked luggage smelled strongly of marijuana and asked if he could explain that. Clarke did not have an answer at first, but after some thought he stated that he must have smoked marijuana in the vehicle on the way to the airport. Clarke was traveling alone and was the only person present at the time of the searches.

8. I advised Clarke that the currency would be seized based upon probable cause that it was proceeds of drug trafficking or was intended to be used in an illegal drug transaction. As I filled out a receipt for Clarke, he clamped his hand down on the currency and said that I was not going to take it. I explained the situation again and advised Clarke that the currency was going to be seized. Clarke became irate and started yelling at me and Det. Boyd. After a period of time, Det. Boyd advised Clarke again that the currency was going to be seized. Det. Boyd reached for the currency at which time Clarke grabbed Det. Boyd by the wrist and pushed him away from the currency. Det. Boyd advised Clarke that he was under arrest and attempted to place handcuffs on Clarke. A short struggle ensued and Clarke was eventually arrested and charged with assault on a police officer, resisting arrest, and disorderly conduct.

9. The seized currency was examined by the drug-detecting K-9 who showed a positive indication for the presence of a narcotic odor.

10. Several mitigating factors led to officers believe that there was probable cause that the U.S. currency carried by Burnet was proceeds from drug-related activities, including:
    - travel on a recently purchased one-way ticket;
    - inability to provide documentation for source of currency;
    - strong odor of marijuana on checked luggage;
    - positive hit by drug dog.

11. On April 7, 2014, Charles L. Clarke II filed a claim to the seized currency in the Drug Enforcement Administration's administrative forfeiture proceeding.
    For the above-stated reasons your affiant believes that the seized currency was furnished or intended to be furnished in exchange for a controlled substance, was proceeds traceable to such an exchange, or was intended to be used to facilitate the illegal sale of narcotics and is, therefore, subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881 (a)(6).
    This __1__ day of __July__, 2014.

    _____
    TFO William T. Conrad
    Task Force Officer
    Drug Enforcement Administration

    Subscribed, sworn, and acknowledged before me by William T. Conrad this the __1__ day of July, 2014.

    My Commission expires: __5/05/2018__

    _____
    NOTARY PUBLIC, STATE AT LARGE

    CHRISTOPHER P. CONNERS
    Notary Public, State of Ohio
    My Commission Expires 05-05-2018

4