UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON
CIVIL ACTION NO. 14-125-WOB-JGW

UNITED STATES OF AMERICA                                    PLAINTIFF

V.

$11,000.00 IN UNITED STATES CURRENCY                       DEFENDANT

MEMORANDUM ORDER

Pending is a motion to compel filed by claimant Charles Clarke. Doc. 37. After

examining the record and applicable law, the Court concludes that the motion will be granted in

part and denied in part.

### I. Relevant Procedural History

This is a forfeiture action, based upon $11,000.00 seized from claimant in February 2014

at the Cincinnati/Northern Kentucky International Airport by Officer William T. Conrad of the

Covington Police Department (who was deputized as a DEA agent) and Detective Christopher

Boyd of the Cincinnati/Northern Kentucky Airport Police Department. Claimant contends via

affirmative defenses that the seizure was improper because, among other reasons, the statutory

funding mechanism by which local agencies and the prosecuting United States Attorney's office

may receive a portion of any forfeited funds violates the Fifth Amendment's Due Process

Clause.[1]

To attempt to prove his affirmative defenses, claimant has requested information

regarding the distribution of forfeited funds. Claimant also seeks information from the arresting

_____

[1] Specifically, claimant's sixth affirmative defense contends that "[f]orfeiture of the Defendant currency is barred by
the Fifth Amendment of the United States Constitution, which prohibits depriving citizens of property without due
process of law." Doc. 28, p. 5.

1

officers' personnel files and related training documents.  The United States objects on numerous grounds, including relevancy, undue burden and privacy concerns.  The parties were unable to resolve the matter amicably amongst themselves, so the Court conducted a phone conference with counsel after which the Court directed claimant to file a motion to compel.  Doc. 36.  Claimant timely filed the pending motion to compel (doc. 37) and the United States timely filed a response in opposition (doc. 39), so the motion is ripe for adjudication.

## II.  Analysis[2]

### A.  Funding Information

The chief dispute among the parties involves whether claimant is entitled to information regarding the distribution of forfeited funds to local agencies.  *See* 21 U.S.C. §881(e)(1) ("Whenever property is civilly or criminally forfeited under this subchapter the Attorney General may . . . retain the property for official use or . . .  transfer the property to any Federal agency or to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property . . . .").  It is uncontested that seizures and resultant forfeitures of property by the United States must comply with the Fifth Amendment's Due Process

---

2 Claimant makes much of the United States' supposedly tardy initial discovery responses; counsel for the United States asserts that he had a verbal agreement with claimant's local counsel for an extension of time (a contention claimant's local counsel denies).  The Court will not accept claimant's invitation to deem admitted any requests for admission based on the United States' supposedly tardy responses.  The United States' counsel, an officer of the Court, has stated his belief that he had an oral agreement for an extension of time to provide the responses.  Also, in any event, the United States could move to withdraw any admissions under Fed.R.Civ.P. 36(b).  Finally, claimant himself has failed to answer timely discovery requests from the United States.  *See* Doc. 26 ("A conference call was held on 2/26/15 with Mr. Clarke and Mr. Olinger during which Mr. Clarke, pro se, was advised again of his obligation to answer long overdue written discovery sent to him on 11/9/14.").

Similarly, though better practice would certainly have been to raise all objections in its initial response, the Court will not refuse to consider all the United States' objections to providing discovery, including any objections which were not contained in its initial responses.  The Court's focus is to rule appropriately on the merits of the discovery requests, not to play a game of procedural "gotcha."  In addition, the Court asked the parties before the July 23, 2015 conference call to set forth briefly their version of the discovery dispute(s).  All parties were consequently free to set forth their version of the facts and the law at that time.  Moreover, as will be seen later in this memorandum opinion, the lack of relevancy or overly broad nature of the discovery requests makes it unnecessary to consider on the merits many of the United States' purportedly belated objections.

requirements.  Claimant's theory, as expressed in his affirmative defenses, is that the potential financial gain by a local arresting/prosecuting agency in forfeiture proceedings is so substantial as to cause the resultant forfeitures to violate due process.  In the motion to compel, claimant states that the crux of this defense is that "the statutory provision allowing law enforcement to retain forfeiture proceeds for its own use creates a direct financial incentive for law-enforcement officers to seize and forfeit property, and thereby creates an impermissible conflict of interest in violation of the Due Process Clause."  Doc. 37-1, p. 12.

In *Marshall v. Jerico, Inc.*, 446 U.S. 238, 249-250 (1980) the Supreme Court held that "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions."  The precise level of self-funding necessary to constitute a constitutional conflict, however, has not been delineated with precision.  *See id.* at 250 ("In this case, we need not say with precision what limits there may be on a financial or personal interest of one who performs a prosecutorial function, for here the influence alleged to impose bias is exceptionally remote. No governmental official stands to profit economically from vigorous enforcement . . . ." (footnote omitted).

The question thus becomes whether the forfeiture at issue is impermissibly tainted by the potential financial interests of the employers of the arresting officers, as well as the prosecutor (the United States Attorney's office for the Eastern District of Kentucky).  Because the level of funding the departments involved with claimant's case receive from seized funds (if any) is unknown, claimant wants to conduct discovery on that issue.  Claimant has propounded numerous discovery requests on this point.  For example, interrogatory fifteen asks the United States to "[d]escribe in detail any law-enforcement task force operating in cooperation with any

3

agency of the United States at the Cincinnati/Northern Kentucky International Airport, including, but not limited to, the task force's name, purpose, activities, organizational structure, and source of authority creating the task force." Doc. 37-3, p. 10. Claimant also submitted a request for production of documents asking for "[a]ny and all agreements between the United States and any agency that is employing or that previously employed" the arresting officers. Doc. 37-4, p. 9. Claimant also propounded a request for production of documents seeking "[all documents or agreements that provide for the sharing of proceeds between any state, municipal, or other agency and any federal agency related to the $11,000 seized from Mr. Clarke." *Id.* at p. 12. Finally, claimant propounded numerous requests for production of documents seeking a range of budgetary information. *Id.* at 12-15.

The United States has refused to provide the requested information, tersely contending that "[q]uite simply, this information is irrelevant because it has zero bearing upon whether the seized currency is subject to forfeiture. Furthermore, even if this information were relevant, the scope of the requests is excessively broad and unduly burdensome." Doc. 39, p. 15. The United States' response does not even cite *Marshall*, even though that case is the precedential foundation underpinning claimant's affirmative defense.

The United States' undue burden argument is insufficient. The United States simply asserts, without any elaboration or supporting affidavits, that it is unduly burdensome to comply with claimant's discovery requests. "A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden. The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *In re Heparin Products Liability Litigation*, 273 F.R.D. 399, 410-11

4

(N.D. Ohio 2011) (quotation marks and citations omitted).  *See also Groupwell International (HK) Ltd. v. Gourmet Exp., LLC,* 277 F.R.D. 348, 360-61 (W.D.Ky. 2011) (holding that the mere fact that responding to a discovery request would involve producing a "significant number of documents" or would "involve inconvenience and expense" is "not a sufficient showing of burdensomeness to garner protection from the Court.") (quotation marks and citation omitted).

The Court then turns its attention to the United States' relevancy objections.[3]  "The Federal Rules of Civil Procedure permit discovery regarding any nonprivileged matter that is relevant to any party's claim or defense or appears reasonably calculated to lead to the discovery of relevant evidence.  When considering a motion to compel, a discovery request should be considered to be seeking relevant information if there is *any* possibility that the information sought may be relevant to a claim or defense raised."  *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 607-08 (E.D.Ky. 2011) (internal quotation marks and citations omitted) (emphasis original).  Relevance is "construed broadly" and includes anything "that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may [be] in the case."  *Id.* at 609 (quotation marks omitted).  The United States, as the party opposing discovery, "must show that the material [sought] either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure."  *Id.* at 608 (internal quotation marks and citation omitted).

Though perhaps not directly related to the underlying propriety of the seizure at hand

---

3 At times in its response the United States seems to assert that discovery is improper because claimant's affirmative defenses lack merit.  However, the perceived lack of merit of an opposing party's claims is not a valid reason to refuse to provide discovery.  *See, e.g.,* 8 Fed. Prac. & Proc. Civ. § 2008 (3d ed. 2015) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.").

(i.e., whether the funds at issue are related to drug transactions), discovery on the financial distribution of seized funds is directly related to plaintiff's due process-based affirmative defense.[4]  In fact, discovery on that issue could potentially help the United States show that there is no due process issue.  Therefore, the Court concludes that claimant is entitled to some discovery on the allocation of seized funds.[5]

However, the discovery requests as written are overly broad and would lead to the provision of discovery far afield from the limited issues before the Court.  For example, claimant has not explained adequately why he needs an organizational chart for the United States Attorney's Office for the Eastern District of Kentucky.  Claimant has also not shown why he needs budgetary information dating all the way back to 2006 from the United States Attorney's office or any other institution.  Similarly, claimant has not shown how information regarding "any" expenditures by the asset forfeiture unit of the Unites States Attorney's office and/or the component members of the drug task force is relevant.  After all, the issue is whether the distribution of the proceeds of seized property supports a conclusion that the forfeiture thereof is

---

4 Claimant also contends in another affirmative defense that "[f]orfeiture of the Defendant currency is barred under the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7. The Controlled Substances Act, 21 U.S.C. § 881(e), which allows the United States to retain forfeited property for law-enforcement purposes, improperly delegates to an Executive Branch agency the power to fund its own activities in violation of the Appropriations Clause." Doc. 28, p. 5.  However, the Court need not discuss that affirmative defense at length because the result of the motion to compel would be essentially the same under both that defense and the due process defense.

5 Because this case has received coverage in the press, including from the Washington Post, the United States posits that claimant already has some of the information requested and, consequently, the motion to compel should be denied.  However, it is not known with precision what, if any, information claimant has already obtained or from what source(s).  In any event, "[a] requested party may not refuse to respond to a requesting party's discovery request on the ground that the requested information is in the possession of the requesting party." *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D. N.Y. 2003).

The United States also fleetingly asserts that claimant may already have obtained some of the requested budgetary information via Freedom of Information Act (FOIA) requests.  Again, however, the record does not show with precision what, if any, information applicable to the discovery requests is already in claimant's possession. Regardless, the fact that claimant may possess some of the requested information is not a valid reason to refuse to provide discovery. *Goord*, 215 F.R.D. at 77.  Finally, the fact that the information may readily be obtainable via a FOIA request cuts against the United States' arguments that the information is private and/or unduly burdensome to produce.

based on impermissible financial reasons—the manner in which those distributed funds are later spent neither enhances nor diminishes the propriety of the initial distribution itself.

In addition to seeking irrelevant materials, many of claimant's discovery requests are manifestly overly broad.  For example, request for production of documents 29 asks for "[a]ll documents relating to or describing expenditures, including itemized expenditures, made from forfeiture proceeds by any law enforcement task force operating in cooperation with any agency of the United States at the Cincinnati/Northern Kentucky International Airport."  Doc. 37-4, p. 14.  There is no time limit on the request, which involves agencies that had nothing to do with the seizure of the currency at issue. Moreover, the usage of the term "all documents" is a hallmark of an overly broad discovery request.  *See, e.g., Moore,* 274 F.R.D. at 609 ("Generally, a discovery request is considered overly broad or unduly burdensome on its face if it (1) uses an omnibus term ... and (2) applies to a general category or group of documents or a broad range of information.") (quotation marks omitted).  In short, claimant has not made any showing that his thoroughly sweeping requests have any direct bearing on any of his affirmative defenses.

Accordingly, the Court will narrow the overly broad discovery requests to require the United States to provide only: 1) documents that specify the procedures in place for division of forfeited funds, particularly the $11,000 seized from claimant (request for production 23); the percentage of the budget of the United States Attorney's office for the Eastern District of Kentucky derived from forfeited funds since 2012 (which was two years before the seizure at issue, a time period more than sufficient for claimant to demonstrate his financial incentive theory); and the percentage of the budgets since 2012 of the Cincinnati/Northern Kentucky Airport police department and the Covington police department (the only two law enforcement entities, other than the United States Attorney's office, which were directly involved in the

seizure at hand)[6] derived from funds acquired via forfeiture proceedings.[7]

### B. Training Records and Personnel Files

The second main type of information at issue involves claimant's requests for the personnel files and training records of officers Conrad and Boyd.  To wit, claimant sent interrogatories seeking the "training, including, but not limited to, training for (a) conducting airport stops; (b) questioning and searching travelers; and (c) seizing currency or other property subject to forfeiture under 21 U.S.C. § 881" of both officers. Doc. 37-3, p. 9-10.  Claimant also propounded interrogatories asking the United States to

> Explain in detail all instances in which Officer Conrad [and Officer Boyd] ha[ve] seized currency due to suspicion that the currency was intended to be furnished in exchange for illegal or controlled substances or was proceeds of such transactions. For each instance, your explanation should include: (a) the amount of currency seized; (b) the date of the seizure; (c) the grounds for the seizure; (d) whether any person made a claim for the currency; and (e) if any claim was made, what amount was ultimately distributed to the person making the claim.

*Id.* at p. 10.  Claimant asserts that type of information is necessary to conduct properly any depositions of the officers.

Claimant originally sought the officers' entire employment files but has subsequently narrowed his request to encompass "employment records—including training history, complaints, performance reviews, and disciplinary actions—related to seizing currency and other property for forfeiture and conducting airport interdictions, and to employment records related to

---

6 Claimant contends he needs broad, sweeping information regarding all entities comprising the task force "in order to specifically determine which agency or task force is responsible for seizing his currency." Doc. 37, p. 14. However, it is uncontested that only officers of the Covington police department and the Cincinnati/Northern Kentucky International Airport police department were directly involved in the seizure at hand.

7 The percentage of the budgets of those entities derived from seized/forfeited funds is in direct accord with *Marshall*, in which the Supreme Court concluded that the prosecution was not based on improper financial incentives because the entity in question received less than one percent of its budgetary funds from the activity in question.  446 U.S. at 250 ("Nor is there a realistic possibility that the assistant regional administrator's judgment will be distorted by the prospect of institutional gain as a result of zealous enforcement efforts. As we have noted, the civil penalties collected under § 16(e) represent substantially less that [sic] 1% of the [agency's] budget  . . . .").

employment of either officer by any 'Airport Interdiction Group' at the Cincinnati/Northern Kentucky Airport." Doc. 37-1, p. 24. Claimant again contends that information is necessary for depositions and to determine if the officers' salaries are funded in whole or in part by proceeds stemming from seizures.

The United States has provided lists of the training regarding airport stops/seizures which the arresting officers have undergone. Doc. 39-2, 39-3, 39-4. The United States has also provided answers detailing the prior discipline imposed upon either officer (of which there is very little). Doc. 37-6, p. 7-8. Claimant does not discuss in his motion the materials already provided by the United States. It is unclear why claimant needs additional information to depose adequately either officer. Because claimant has not pointed with sufficient specificity in his motion what additional materials he is entitled to receive and how those additional materials are relevant and necessary to his claims, the Court will not require the United States to respond further.[8]

### C. Document Retention Policies, Etc.

Finally, claimant asks the Court to require the United States to provide documents relating to the DEA's document-retention policy, *see* Claimant's First Set of Reqs. for Produc. No. 8, Ex. C, at 8, and manuals, policies, and guidelines on training law-enforcement officers to conduct airport interdictions and seize currency for forfeiture . . . ." Doc. 37-1, p. 21. According to claimant, "[d]ocuments regarding the DEA's document-retention policy and the training of law-enforcement officers to conduct airport interdictions and seize property bear directly on Mr. Clarke's challenge to the conflict of interest inherent in civil-forfeiture laws." *Id.*

---

[8] Accordingly, it is not necessary for the Court to discuss the United States' other objections, such as the application of the Privacy Act.

It is unclear how the DEA's manuals or policies have any direct bearing on any issue in this action.[9]  Claimant asserts that the materials are relevant but fails to explain the basis for that unsupported assertion.  Moreover, claimant's motion contains no citations to authority from similar cases on this issue.  Therefore, that portion of the motion will be denied.[10]

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED**:

1. Claimant's motion to compel (doc. 37) is **granted in part and denied in part** and the United States shall provide the additional discovery materials in accordance with this memorandum order by August 28, 2015; and

2. Claimant's motion for leave to file a reply brief (doc. 40) is **denied**.  The Court did not envision or allow the filing of a reply when it set the briefing schedule and Claimant has had an adequate opportunity to address the issues at hand in his motion to compel.

This the 13th day of August, 2015.



**Signed By:**

**_J. Gregory Wehrman_**

**United States Magistrate Judge**

---

9 As the United States aptly notes, "[i]t is difficult to imagine how the document retention policy of the DEA has any bearing upon, or is any way relevant to, the question of whether the seized funds constitute drug proceeds. Claimant is free to request information regarding the facts of the handling of any specific evidence or specific documents relevant to or involved in this proceeding if Claimant is concerned that there may have been some sort of deficiency with documentation or evidence generated in relation to this matter. However, general policies and procedures, which serve only to provide general guidance on the DEA's preferred method of document retention, have no bearing upon any factual question in this case." Doc. 39, p. 13.

10 Because the requested materials do not appear to be relevant to the discrete issues raised by the pleadings, the Court need not discuss the merits of the United States' deliberative process or investigatory records-based objections.