## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## AT COVINGTON

UNITED STATES OF AMERICA

              Plaintiff,

    v.

$11,000 IN UNITED STATES CURRENCY

              Defendant,

and

CHARLES L. CLARKE, II

              Claimant.

Civil Action No. 2:14-cv-00125-WOB-JGW

**DECLARATION OF RYAN D. BYRD
IN SUPPORT OF OBJECTIONS TO
RULING ON CLAIMANT'S
MOTION TO COMPEL**

Pursuant to 28 U.S.C. § 1746(2), I, Ryan Byrd, declare the following:

1.     I am fully competent to make this declaration.  I knowingly and voluntarily make this declaration based on my personal knowledge and experience as a Certified Public Accountant with extensive experience providing entities consulting, financial advisory, and audit services.  If called as a witness, I could and would testify competently under oath as to the facts set forth below.

2.     I am the Managing Director of Berkeley Research Group, LLC ("BRG"), a global strategic advisory and consulting organization with a strong base in data analytics.

3.     I have a B.S. in accounting from the University of Maryland, College Park.  Since 2007, I have been licensed as a Certified Public Accountant.  Currently, I am licensed in both Maryland and Virginia and a member of the American Institute of Certified Public Accountants.

4.     I specialize in forensic accounting, government contract accounting, administration, and compliance and am experienced in providing entities consulting, financial

advisory, and audit services.  I have performed financial and performance audits under Generally Accepted Government Auditing Standards (GAGAS), which apply to government agencies. Accordingly, I routinely examine and interpret financial and budgetary data, including that of government entities.

5.      I have been retained by the Claimant in this case, Charles Clarke, as an expert to review the financial and budgetary data provided by the law-enforcement agencies involved in this case.

6.      My opinions below are based on my expertise as well as a thorough review of documents I have received in this case, including:  the Complaint; the Amended Answer; the Court's Order Granting in Part and Denying in Part Claimant's Motion to Compel Discovery Responses; the United States' discovery responses; and the responses received to public records requests submitted by Mr. Clarke's counsel.  I have also received documents from state and local law-enforcement agencies in response to subpoenas served by Mr. Clarke in mid-August.  These subpoenas requested documents by September 8, 2015, but Mr. Clarke has not received complete responses from all 13 agencies.  I expect to receive additional documents in response to the subpoenas by the end of this month.

7.      Under the Federal Equitable Sharing Program, state and local law-enforcement agencies that participate in an investigation or prosecution that results in a federal forfeiture may request a share of the net proceeds of the forfeiture.  Under this program, state and local law-enforcement agencies are permitted to receive up to 80% of net forfeiture proceeds, with the remaining 20% to remain the federal share.   State and local law-enforcement agencies requesting a share of forfeiture proceeds must submit a form, called a DAG-71, to the United States Department of Justice.

8.     Based on my review of these DAG-71 forms submitted in connection with the seizure of Mr. Clarke's money, I have learned that 13 state and local agencies from Ohio and Kentucky, which are part of the Cincinnati Drug Enforcement Administration Task Force ("DEA Task Force"), have requested a share of the money seized from Mr. Clarke, under the Federal Equitable Sharing Program, if the money is ordered forfeited.  The agencies and their requested shares are detailed in the chart below:

| State or Local Law-Enforcement Agency | Requested Share of Mr. Clarke's Money |
|---|---|
| Attorney General of Ohio/BCI & I | 3.07% |
| Butler County Sheriff's Department | 3.07% |
| Boone County Sheriff's Department | 3.07% |
| Covington Police Department | 3.07% |
| Colerain Township Police Department | 3.07% |
| Cincinnati/Northern Kentucky Airport Police Department | 40.00% |
| Cincinnati Police Department | 6.14% |
| Florence Police Department | 3.07% |
| Kentucky State Police | 3.07% |
| Kenton County Police Department | 3.07% |
| Norwood Police Department | 3.07% |
| Ohio State Highway Patrol | 3.07% |
| West Chester Township Police Department | 3.07% |
| **Total Percentage Requested** | **79.91%** |

*See* Ex. 1, Form DAG-72, Decision Form for Transfer of Federally Forfeited Property.

9.     I have also learned that forfeiture proceeds are used by these agencies for a variety of law-enforcement purposes, including salaries, overtime, and purchase of supplies, equipment, and vehicles.  For example, the Covington Police Department uses forfeiture funds to pay overtime and reimburse officers—such as one of the officers involved in the seizure of Mr. Clarke's money, Officer William T. Conrad—for training, travel, accommodations, and equipment.  The Covington Police Department also uses forfeiture proceeds for other expenditures such as office supplies, exercise equipment, utility bills, and payment for

informants.  The Cincinnati/Northern Kentucky Airport Police Department uses forfeiture funds to pay for similar operating expenses.

10.     The United States has not provided any documentation on how either the U.S. Attorney's Office for the Eastern District of Kentucky or the DEA Task Force has spent or used forfeiture funds.  The United States also has not provided detailed budgetary data for the U.S. Attorney's Office for the Eastern District of Kentucky, nor has it provided *any* data on the budget of the Cincinnati DEA Task Force.  The United States also has not provided any specific supporting documentation about how forfeiture proceeds (including 20% of the federal share from Equitable Sharing cases) are allocated to federal law-enforcement agencies participating in the Justice Department's Asset Forfeiture Program.

11.     My understanding is that the Court's August 13, 2015 discovery ruling has denied Mr. Clarke this information.  Without this information, it is impossible for me to provide a thorough analysis of the financial incentives of the United States Attorney's Office for the Eastern District of Kentucky and DEA Task Force in prosecuting civil forfeiture cases and seizing property for forfeiture.

12.     In order to conduct a thorough analysis, I will need three categories of information:  (1) expenditures of forfeiture funds; (2) complete budget data for the relevant law-enforcement agencies; and (3) documentation on how forfeiture funds are requested and allocated to federal law-enforcement agencies.

13.     *First*, I will need a more detailed account of how forfeiture funds are spent by the U.S. Attorney's Office for the Eastern District of Kentucky and the DEA Task Force in order to support Mr. Clarke's affirmative defenses.  For example, the detailed information provided by the Cincinnati/Northern Kentucky Airport Police Department shows that that agency is paying

4

for normal operating budget expenditures with forfeiture funds.  A similarly detailed account from the U.S. Attorney's Office for the Eastern District of Kentucky and the DEA Task Force will reveal whether these federal law-enforcement agencies are also using forfeiture funds to pay for normal operating expenses.  This would be relevant to Mr. Clarke's defenses under the Due Process Clause and the Appropriations Clause.

14.     *Second*, in order to conduct a complete analysis regarding what percent of an agency's budget is represented by forfeiture proceeds, I will need detailed budgetary data from the United States Attorney's Office for the Eastern District of Kentucky and the DEA Task Force from at least Fiscal Year 2011 through Fiscal Year 2015.

15.     At this time, I do not have any budget data on the DEA Task Force.  My understanding is that the Court denied Mr. Clarke's request for this information.

16.     Additionally, the high-level summary of budgetary data provided by the U.S. Attorney's Office for the Eastern District of Kentucky is insufficient.  Initially, these data do not reveal the extent to which individual components of the Office, including the Asset Forfeiture Unit, derive funding from forfeiture.  Moreover, the United States' supplemental responses do not specify whether the Office's budget figures represent the original or the final appropriated budget.  In order to verify the accuracy of the United States' calculations of forfeiture as a percentage of the budget and to determine the reasonableness of those budget estimates, I will need the original and the final appropriated budgets for at least FY 2011 through FY 2015.  Comparative analysis of budgeted appropriations and estimated expenditures with actual expenditures will identify potential funding shortfalls to cover annual operating expenses of the agencies participating in the forfeiture program, and highlight the use of forfeiture funds to cover those shortfalls.

17.     Moreover, it is the standard in my field to use five to ten years of financial data to examine and analyze patterns.  The more limited sample of four years (only two of which are before the seizure occurred in this case) does not clearly identify the nature and pattern of changes, due to the risk of anomalies.  Indeed, based on the limited data provided, there is an anomaly in FY 2012, during which the U.S. Attorney's Office for the Eastern District of Kentucky only received $10,930 in forfeiture funds.  In each of the following three years, the Office received an average of $221,913 in forfeiture funds.  To truly understand why FY 2012 is an outlier (with a 2000% difference in forfeiture funds), I would need prior years of budgetary data, and, at minimum, the data for FY 2011.

18.     *Third*, the United States has not provided any documentation on how forfeiture funds are requested by, and allocated to, federal law-enforcement agencies like the U.S. Attorney's Office for the Eastern District of Kentucky and the DEA Task Force.  The details on this process will provide insight into the extent to which these agencies directly or indirectly benefit financially from forfeitures of property they seize and prosecute.

19.     I would be able to conduct a thorough analysis of budgets and forfeiture expenditures if provided with the following information from the U.S. Attorney's Office for the Eastern District of Kentucky and the DEA Task Force:

    a.  itemized annual department budgets from FY 2011 through FY 2015 including estimated appropriations (funding) by source, and estimated expenditures by expense category (*e.g.*, labor, travel, equipment);

    b.  final appropriations (funding), and actual expenditures (e.g., labor, travel, equipment) from FY 2011 through FY Year 2015 at itemized annual department budget level;

c.  actual expenditures general ledger detail (expenditure detail listing each expense transaction) from FY 2011 through FY 2015 for each  appropriation category, including the Assets Forfeiture Fund, to include expenditure description, date, fiscal year, amount, and account (*e.g.*, labor, travel, equipment);

d.  Forfeiture Sharing Distribution Reports from FY 2011 through FY 2015 including transaction type (*e.g.*, cash distribution), asset ID, asset description, forfeiture type (*e.g.*, administrative, criminal, civil), description type, transaction date, and transaction amount (shared forfeiture amount); and

e.  Assets Forfeiture Fund annual statements for FY 2011 through FY 2015, including contributions to the fund, annual appropriation amounts, annual expenditures against appropriated funds, and fund cash balance.

f.  Comprehensive Annual Financial Report and trial balance, including assets, liabilities and expenditure accounts from FY 2011 through FY 2015.

g.  Policies and procedures for how forfeited funds are deposited into the Assets Forfeiture Fund and then allocated to requesting federal agencies, particularly, the U.S. Attorney's Office for the Eastern District of Kentucky and the DEA Task Force involved in the seizure of Defendant currency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 18, 2015,

By: _____
                    Ryan D. Byrd

7