# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# AT COVINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Plaintiff,<br><br>        v.<br><br>$11,000 IN UNITED STATES CURRENCY<br><br>                    Defendant,<br><br>and<br><br>CHARLES L. CLARKE, II<br><br>                    Claimant. | Civil Action No. 2:14-cv-00125-WOB-JGW |

## MEMORANDUM IN SUPPORT OF CLAIMANT'S
## MOTION TO SUPPRESS CELL PHONE EVIDENCE

INSTITUTE FOR JUSTICE
Darpana M. Sheth*
Renée D. Flaherty*
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone:  (703) 682-9320
Fax:     (703) 682-9321
Email:  dsheth@ij.org
            rflaherty@ij.org
*Admitted pro hac vice

CHRIS WIEST, ATTORNEY AT LAW, PLLC
Christopher D. Wiest (KBA 90725)
25 Town Center Blvd., Suite 104
Crestview Hills, KY 41017
Mobile:  (513) 257-1895
Fax:       (859) 495-0803
Email:   chris@cwiestlaw.com

*Attorneys for Claimant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ........................................................................................1

ARGUMENT ...........................................................................................................5

I.    THE SEARCH OF CHARLES'S CELL PHONE VIOLATED THE FOURTH AMENDMENT
      BECAUSE THE AUTHORIZING WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE........7

    A.   The Facts Contained in the Boyd Affidavit Fall Woefully Short of
         Establishing Probable Cause That Evidence of Drug Trafficking Would
         Be Found on Charles's Cell Phone .........................................................8

         1.   Charles's Travel Itinerary Is Not Suspicious and Cannot Be Given
              Any Weight in the Probable-Cause Calculus.....................................8

         2.   The Fact That Charles Was Carrying $11,000 Kept Neatly in Order
              With Rubber Bands Is Not Probative.................................................11

         3.   The Odor of Marijuana Does Not Establish Probable Cause to
              Search Charles's Cell Phone for Evidence of Drug Trafficking....................13

         4.   The Totality of Facts Contained in the Boyd Affidavit Fails to Add
              Up to Probable Cause to Search Charles's Cell Phone...................17

    B.   Even if the Boyd Affidavit Contains Sufficient Facts to Establish
         Probable Cause of Drug Trafficking, Facts Omitted from the Affidavit
         But Known to Detective Boyd at the Time of the Warrant Application
         Defeat Probable Cause .........................................................................19

II.   THIS COURT SHOULD EXCLUDE THE UNCONSTITUTIONALLY OBTAINED DIGITAL
      PICTURES BECAUSE THE GOOD-FAITH EXCEPTION DOES NOT APPLY ..............................22

    A.   Good Faith Does Not Apply Because Detective Boyd Omitted Material
         Facts from the Affidavit.........................................................................23

    B.   The Boyd Affidavit Was So Bare Bones That No Reasonable Officer Would
         Have Relied on the Warrant..................................................................25

    C.   The Lack of Probable Cause Was Obvious Enough to Preclude Good Faith........27

CONCLUSION.........................................................................................................28

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                        **<u>Page(s)</u>**

*Boyd v. United States*, 116 U.S. 616 (1886) ...............................................................5

*Florida v. Harris*, 133 S. Ct. 1050 (2013) ................................................................17

*Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001) ........................................6

*Illinois v. Gates*, 462 U.S. 213 (1983) ...........................................................6, 7, 25

*In re Search of Certain Cell Phones*, 541 F. Supp. 2d 1 (D.D.C. 2008) ................15, 16

*Johnson v. United States*, 333 U.S. 10 (1947) ...........................................................5

*Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) .......................................................6

*Mechler v. Hodges*, No. C-1-02-948, 2005 WL 1406102 (S.D. Ohio June 15, 2005) ................23

*Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013) ........................................................16

*One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693 (1965)............................6, 7

*Reid v. Georgia*, 448 U.S. 438 (1980) .......................................................................9

*Riley v. California*, 134 S. Ct. 2473 (2014) ......................................................5, 14, 15

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) .......................................21, 23, 24, 25

*United States v. $5,000 in U.S. Currency*, 40 F.3d 846 (6th Cir. 1994) ............................11, 17, 21

*United States v. Ten Thousand Seven Hundred Dollars and No Cents in U.S. Currency*, 258 F.3d 215 (3d Cir. 2001)..............................................................12, 19, 21

*United States v. Currency $11,331*, 482 F. Supp. 2d 873 (E.D. Mich. 2007) ..............................11

*United States v. Twelve Thousand, Three Hundred Ninety Dollars ($12,390)*, 956 F.2d 801 (8th Cir. 1992) ...........................................................6

*United States v. Twenty One Thousand Dollars ($21,000) in United States Postal Money Orders and Seven Hundred Eighty-Five Dollars ($785) in U.S. Currency*, 298 F. Supp. 2d 597 (E.D. Mich. 2003).......................................................11

*United States v. $23,000.00 in U.S. Currency*, 54 F.3d 777, No. 94-6100 (6th Cir. May 15, 1995) ...............................................................9

ii

*United States v. $24,700 in U.S. Currency*, No. 2:15-CV-1264,
    2015 WL 4647978 (D.N.J. Aug. 5, 2015) ........................................................12

*United States v. $30,000.00 in U.S. Currency*, 30 F. App'x 473 (6th Cir. 2002)..........9, 10, 11, 12

*United States v. $32,000 in U.S. Currency*, No. CV06-1766-PHX-DGC,
    2007 WL 1297098 (D. Ariz. Apr. 30, 2007) ..................................................12

*United States v. $40,000 in U.S. Currency*, 999 F. Supp. 234 (D.P.R. 1998) ..................10, 12, 19

*United States v. Fifty-Three Thousand Eighty-Two Dollars in U.S. Currency, $53,082*,
    985 F.2d 245 (6th Cir. 1993) ........................................................................21

*United States v. $118,170.00 in U.S. Currency*, 69 F. App'x 714 (6th Cir. 2003)........................17

*United States v. Funds in Amount of One Hundred Thousand One Hundred and
    Twenty Dollars*, --- F. Supp. 3d ---, No. 03 C 3644,
    2015 WL 5212055 (N.D. Ill. Feb. 11, 2015) ..................................................17

*United States v. $191,910 in U.S. Currency*, 16 F.3d 1051 (9th Cir. 1994) ................................11

*United States v. 1328 N. Main St.*, 713 F. Supp. 1495 (S.D. Ohio 1988)......................................23

*United States v. 6380 Little Canyon Rd.*, 59 F.3d 974 (9th Cir. 1995)............................................6

*United States v. Andrews*, 600 F.2d 563 (6th Cir. 1979) ..............................................................10

*United States v. Bajakajian*, 524 U.S. 321 (1998) ........................................................................6

*United States v. Barrington*, 806 F.2d 529 (5th Cir. 1986) ........................................................27

*United States v. Bethal*, 245 F. App'x 460 (6th Cir. 2007)..........................................................16

*United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004)........................................................6, 7

*United States v. Cotton*, 928 F.2d 405, Nos. 89-6291, 90-5080 (6th Cir. Mar. 12, 1991)........9, 10

*United States v. Couch*, Cr. No. 13-03, 2013 WL 6095512 (E.D. Ky. Nov. 20, 2013)................16

*United States v. Eiland*, No. CRIM.04-379, 2006 WL 516743 (D.D.C. Mar. 2, 2006) ...............16

*United States v. Fiasche*, 520 F.3d 694 (7th Cir. 2008)................................................................15

*United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005) ..............................................................15

iii

*United States v. Garcia-Aleman*, No. 1:10-CR-29,
    2010 WL 2635071 (E.D. Tex. June 9, 2010) ...................................................................18

*United States v. Goward*, 188 F. App'x 355 (6th Cir. 2006) ...................................................14, 16

*United States v. Helton*, 314 F.3d 812 (6th Cir. 2003) ...................................................................7

*United States v. Herevia*, Cr. No. 13-639, 2014 WL 4784321 (D. Md. Sept. 23, 2014) ..............18

*United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008) ...................................................................16

*United States v. Hopewell*, No. 1:08-CR-065,
    2010 WL 1257578 (S.D. Ohio Mar. 31, 2010) ...................................................................27, 28

*United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993) ...................................................................25

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) ...........................................6

*United States v. Jauregui*, Cr. No. 10-272-04, 2011 WL 753120 (D. Minn. Feb. 9, 2011) ..........18

*United States v. Jefferson*, No. 14-20119, 2015 WL 3576035 (E.D. Mich. June 5, 2015) ...........20

*United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005) ...................................................7, 25, 26

*United States v. Leon*, 468 U.S. 897 (1984) ...................................................................22, 27, 28

*United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006) .................................................. *passim*

*United States v. Meador*, No. 1:06 CR 134, 2008 WL 4922001 (E.D. Mo. Jan. 7, 2008) ............18

*United States v. Mosley*, No. 08-22, 2008 WL 1868012 (E.D. Ky Apr. 24, 2008) ......................27

*United States v. One Lot of U.S. Currency Totaling $14,665*,
    33 F. Supp. 2d 47 (D. Mass. 1998) ...................................................................11, 12, 13

*United States v. Ramos-Rodriguez*, 809 F.3d 817 (5th Cir. 2016) .................................................15

*United States v. Reynolds*, No. 3:08-CR-143, 2009 WL 1588413 (E.D. Tenn. June 4, 2009) ......20

*United States v. Russian*, No. 14-10018-01, 2015 WL 1863333 (D. Kan. Apr. 23, 2015) .....15, 16

*United States v. Saperstein*, 723 F.2d 1221 (6th Cir. 1983) .................................................8, 10, 21

*United Sates v. Savoca*, 761 F.2d 292 (6th Cir. 1985) ...................................................................22

*United States v. Townsend*, 305 F.3d 537 (6th Cir. 2002) ...........................................................10

*United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1998) ........................................................25, 26

*United States v. West*, 520 F.3d 604 (6th Cir. 2008) .................................................5, 7, 19, 23, 24

*United States v. Wiseman*, 158 F. Supp. 2d 1242 (D. Kan. 2001) .................................................16

*United States v. Zaavedra*, No. 12-CR-156, 2013 WL 6438981 (N.D. Okla. Dec. 9, 2013) ........18

*Wolgast v. Tawas Police Authority*, No. Civ. 05-10278,
        2006 WL 2583228 (E.D. Mich. Sept. 7, 2006) ...............................................................24

## **Constitutional Provisions**

U.S. Const. amend. IV ............................................................................................................ *passim*

## **Codes and Statutes**

21 U.S.C. § 881(e)(1)(A) ...............................................................................................................6

21 U.S.C. § 881(e)(1)(B) ...............................................................................................................6

21 U.S.C. § 881(e)(2)(A)(i) ...........................................................................................................6

28 U.S.C. § 524(c) .........................................................................................................................6

28 U.S.C. § 524(c)(1) *et seq.* .........................................................................................................6

38 U.S.C. § 3500 *et seq.*.................................................................................................................3

## **Rules**

Fed. R. Evid. 804(b)(3)(A) ......................................................................................................23, 24

## **Other Authorities**

Office of the Inspector Gen., U.S. Dep't of Justice, *Review of the Drug Enforcement
        Administration's Use of Cold Consent Encounters at Mass Transportation
        Facilities* (2015).............................................................................................................2

U.S. Drug Enforcement Admin., *2015 National Drug Threat Assessment Summary* (2015)........10

## INTRODUCTION

In this action to civilly forfeit his $11,000, Claimant Charles Clarke moves to suppress digital pictures obtained from his cell phone because the authorizing search warrant was not supported by probable cause.  The facts contained in the affidavit supporting the search warrant were so woefully insufficient that no reasonable officer would have believed that they established probable cause to search Charles's cell phone for evidence of drug trafficking.  At most, the affidavit only establishes probable cause that Charles was a recreational marijuana user.  Courts have repeatedly held that evidence of drug use is insufficient to constitute probable cause of drug trafficking.  Moreover, the affidavit failed to include information that was both known to the officer at the time of the warrant application and cut against any belief that Charles was a drug trafficker.

The resulting transgression of Charles's Fourth Amendment rights was particularly stark.  The deficient affidavit allowed the government to scour through over 1000 pictures memorializing nearly every aspect of Charles's life—from the mundane to the intimate.[1]  Accordingly, the digital pictures should be suppressed under the exclusionary rule.

## STATEMENT OF FACTS[2]

Charles was awaiting an afternoon flight back home to Orlando, FL when he was approached at the concourse gate by then Cincinnati/Northern Kentucky Airport Police Detective Christopher Boyd[3] and Drug Enforcement Administration Task Force Agent William T. Conrad.

---

[1]  Despite failing to sufficiently authenticate these digital pictures, the United States filed some of these materials previously.  (*See* ECF No. 39-1.)  Charles preserves his right to challenge the admissibility of this evidence in the event that the Court does not grant this motion.  If the Court does grant this motion, these prior filings should be stricken from the public docket.

[2]  This section is based on facts known to the officers at the time of the warrant application.

[3]  Detective Boyd is no longer a detective with the Airport Police Department.  In April 2014, he became a patrol officer with the Newport, Kentucky Police Department.  (Sheth Decl., Ex. 4, Dep.

(*See* Declaration of Darpana Sheth ("Sheth Decl."), Ex. 2 ("Aff. Search Warrant"), at 3.)[4]

Unbeknownst to Charles, the officers had received a tip that Charles had recently purchased a one-way ticket, and that upon checking into his flight, his luggage had a "strong odor of marijuana." (*Id.* at 3; Aff. William T. Conrad, ECF No. 1-2 ("Conrad Aff.") ¶ 3.) A criminal history check revealed that Charles had no prior drug-related arrests. (*See* Conrad Aff. ¶ 4; Sheth Decl., Ex. 4, Dep. Christopher Boyd ("Boyd Dep.") 42:07–10, Jan. 20, 2016.)

Armed with this information, the officers sat on either side of Charles at the gate and questioned him about his travel. (Aff. Search Warrant at 3.) Fully cooperating with the officers, Charles replied that he "was going back home to Florida." (*Id.*) Charles also informed the officers that he had been in Cincinnati since December 2013 visiting friends and relatives. (Conrad Aff. ¶ 5.) Agent Conrad later testified in his deposition that, in light of Charles's length of stay in Cincinnati, he did not consider the one-way ticket purchase particularly significant. (Sheth Decl., Ex. 5, Dep. William Conrad ("Conrad Dep.") 190:23–91:10, Jan. 21, 2016.)

Agent Conrad then informed Charles that he and Detective Boyd "belong[ed] to an interdiction group at the airport and asked him if he had any narcotics, weapons, or large amounts of currency on him or in his luggage." (Conrad Aff. ¶ 5.) Charles volunteered that he was carrying cash and cooperated with Agent Conrad's request to remove the money from his pockets and place it on the table. (Aff. Search Warrant at 3.) The money was organized in

---

Christopher Boyd ("Boyd Dep.") 16:17–20, 17:04–06, Jan. 20, 2016.) This memorandum refers to him as Detective Boyd.

[4] Although the officers claim this was a consensual encounter, Charles did not feel free to leave or terminate the encounter. (Sheth Decl., Ex. 3, Statement of Mr. Clarke, at 1.) Not surprisingly, as Detective Boyd testified, most people do not refuse consent to these "airport interdictions." (Boyd Dep. 30:20–25.) Indeed, the Justice Department's Office of the Inspector General has criticized this "cold consent" tactic, (the DEA's version of "stop and frisk") as raising "civil rights concerns" because it is "more often associated with racial profiling." Office of the Inspector Gen., U.S. Dep't of Justice, *Review of the Drug Enforcement Administration's Use of Cold Consent Encounters at Mass Transportation Facilities*, at i (2015), *available at* https://oig.justice.gov/reports/2015/e153.pdf. For purposes of this motion, it is assumed the encounter at the airport was consensual under Fourth Amendment standards.

rubber bands.  (*Id.* at 3–4.)  When asked about the source of this money, Charles told the officers

the $11,000 was his life savings and that, although he was not employed at the time, he received

benefits from the Department of Veterans Affairs due to his mother's status as a disabled

veteran.[5]  (Conrad Aff. ¶ 6; Boyd Dep. 48:14–21.)

Agent Conrad then asked Charles to explain why his checked luggage smelled like

marijuana.  (Conrad Aff. ¶ 7.)  Charles admitted to the officers that he smoked marijuana earlier

that day in the vehicle that took him to the airport.  (*Id.*)  Detective Boyd thought Charles's

carry-on bag also had a very strong odor of marijuana.  (Aff. Search Warrant at 4.)  With

Charles's consent, Detective Boyd searched his person and his carry-on bag containing his iPad

and other personal effects.  (Boyd Dep. 50:03–05.)  No drugs, drug paraphernalia, other

contraband, or anything of evidentiary value were found in the carry-on bag, on his person, or in

his checked luggage.  (Boyd Dep. 46:17–25, 50:03–18; Conrad Aff. ¶ 5.)  Nevertheless, the

officers seized all of Charles's money, his iPad, and his cell phone.  (Aff. Search Warrrant at 4;

Conrad Dep. 154:19–23.)  A drug-detection dog later alerted to the seized money.  (Aff. Search

Warrrant at 4.)

The next day around noon, Detective Boyd applied for a warrant to search Charles's cell

phone.  (Boyd Dep. 115:18–19, 24–25.)  In support of the warrant application, Detective Boyd

attested that he had been with the Airport Police Department for four years (Aff. Search Warrant

at 3) and "has undergone law enforcement training and training in drug trafficking

investigations."  (*Id*. at 4.)  The Boyd Affidavit further swears that Charles "purchased a one-way

---

[5]  Under the Department of Veterans Affairs Dependents' Educational Assistance Program (known as "Chapter 35"), children of those injured in the Armed Forces receive benefits to facilitate educational opportunities.  *See* 38 U.S.C. § 3500 *et seq.* (establishing program "for the purpose of providing opportunities for education to children whose education would otherwise be impeded or interrupted by reason of the disability or death of a parent from a disease or injury incurred or aggravated in the Armed Forces").

3

trip ticket on 02/16/2014 and planned to travel on 02/17/2014, from a known drug user city/state Cincinnati, OH to a known Source city/state Orlando, FL." (*Id*. at 3.)  In fact, Charles had purchased his ticket three to four days before his travel.  (Boyd Dep. 45:10–12; Sheth Decl., Ex. 6, Dep. Charles Clarke, II 59:14–19, Feb. 2, 2016.)  The Boyd Affidavit also states that Charles informed the officers that "his mother gave him the money and it was his life savings" and that he was "unemployed but attended school."  (Aff. Search Warrant at 3.)  Only four sentences in the Boyd Affidavit mention the cell phone:

> During the search of Charles Clarke's person, Detective Boyd discovered a cellular phone that is believed to contain drug trafficking information.  I informed Charles Clarke that due to his deceptive story and the marijuana odor emitted from his carry-on luggage, we would be detaining his money and cellular phone.  TFA Conrad wrote Clarke a federal receipt for the money and phone. . . .  Affiant has undergone law enforcement training and training in drug trafficking investigations and believes that there is probable cause to believe that there is evidence related to drug trafficking located on this phone.

(*Id*. at 4.) (emphases omitted).  Although the Boyd Affidavit mentions the odor of marijuana on the checked luggage and carry-on and the dog alert to the currency (*id*. at 3–4), it fails to mention the following notable facts:

- No drugs, drug paraphernalia, or any kind of contraband was discovered in any of Charles's bags or person.  (Boyd Dep. 46:17-25 (checked bags); *id.* 50:03–18 (person and carry-on bags); Conrad Aff. ¶ 5 (carry-on bag));

- Charles admitted to smoking marijuana earlier that day inside the vehicle that took him to the airport (Conrad Aff. ¶ 7); and

- Charles informed the officers that he received government benefits under Chapter 35 (*id.* ¶ 6).

These facts were known to Detective Boyd at the time he signed his affidavit and submitted the warrant application.

Because of the lunch hour, most of the district court judges in Boone County were not available to review the application.  (Boyd Dep. 116:01–03, 18–19.)  Family Court Judge Linda

Bramlage, who was available, issued a warrant to search the cell phone based solely on the Boyd

Affidavit.  (*Id.* 115:07–15.)  Detective Boyd did not execute the warrant until a month later

around March 20, 2014.  (Sheth Decl., Ex. 1, at 2.)

## ARGUMENT

The Fourth Amendment commands that "no Warrants shall issue, but upon probable

cause, supported by Oath or affirmation, and particularly describing the place to be searched. . ."

U.S. Const. amend. IV.  The Fourth Amendment's warrant requirement is premised on the belief

that "a neutral and detached magistrate" can more reliably determine probable cause than "the

officer engaged in the often competitive enterprise of ferreting out crime."  *United States v. West*,

520 F.3d 604, 609 (6th Cir. 2008) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1947)).

The magistrate's role is particularly important in this case because it involves a warrant to

search a ***cell phone*** for evidence in a ***civil forfeiture*** proceeding.  The Supreme Court has

recognized that cell phones[6] deserve heightened protection under the Fourth Amendment

because they raise "privacy concerns far beyond those implicated by the search of [ ] a wallet or

a purse" or other personal effects.  *Riley v. California*, 134 S. Ct. 2473, 2488–89 (2014)

(observing that equating "data stored on a cell phone" to "physical items" "is like saying a ride

on horseback is materially indistinguishable from a flight to the moon").  Consequently, cell

phone searches "expose to the government far ***more*** than the most exhaustive search of a house."

*Id*. at 2491.

---

6  As the Supreme Court has recognized, "[t]he term 'cell phone' is itself a misleading shorthand."
*Riley v. California*, 134 S. Ct. 2473, 2488 (2014).  With their immense storage capacity, "these devices
are in fact minicomputers" that "collect[] in one place many distinct types of information—an address, a
note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated
record."  *Id*. at 2489.  "They could just as easily be called cameras, video players, rolodexes, calendars,
tape recorders, libraries, diaries, albums, televisions, maps, [and] newspapers."  *Id*.  "Modern cell phones
are not just another technological convenience.  With all they contain and all they may reveal, they hold
for many Americans, 'the privacies of life.'"  *Id*. at 2494–95 (quoting *Boyd v. United States*, 116 U.S.
616, 630 (1886)).

The magistrate's role also takes on greater importance here because the evidence was sought for forfeiture, where police officers are not merely involved in discovering potential criminal activity, but have a direct financial interest in obtaining forfeiture of seized property.[7] *See, e.g.*, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55–56 (1993) ("[The protection of a neutral magistrate] is of particular importance here, where the Government has a direct pecuniary interest in the outcome of the proceeding.").[8]

For a magistrate to be a vital bulwark, the affidavit supporting the application for a search warrant must contain sufficient and particularized facts demonstrating probable cause under the totality of circumstances. *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

As detailed in Section I, the magistrate did not have "a substantial basis for concluding that probable cause existed." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (citing *Gates*, 462 U.S. at 238–39). Because the search of Charles's cell phone violated the Fourth Amendment, the fruits of the unconstitutional search must be suppressed under the exclusionary rule. *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696 (1965)

---

[7] This direct financial incentive is provided by federal law. *See* 21 U.S.C. § 881(e)(1)(A) (authorizing the Attorney General to distribute seized property to state and local law enforcement agencies "which participated directly in the seizure or forfeiture of the property"); *id.* §§ 881(e)(1)(B), 881(e)(2)(A)(i) (authorizing the Attorney General to sell forfeited property and use the proceeds to pay forfeiture expenses); 28 U.S.C. § 524(c)(1) *et seq.* (establishing the Department of Justice Assets Forfeiture Fund, which allows forfeiture proceeds to be used for a variety of law-enforcement purposes).

[8] *See also Krimstock v. Kelly*, 306 F.3d 40, 51 (2d Cir. 2002) (op. of Sotomayor, J.) (noting the need for a prompt hearing for vehicle forfeitures because, in part, of the seizing authority's financial interest); *Freeman v. City of Dallas*, 242 F.3d 642, 666–67 (5th Cir. 2001) (en banc) (Dennis, J., dissenting) ("The protection of an adversary hearing before a neutral magistrate is of particular importance where the government has a direct pecuniary interest in the outcome of the proceeding.); *United States v. 6380 Little Canyon Rd.*, 59 F.3d 974, 984 (9th Cir. 1995), *abrogated on other grounds by United States v. Bajakajian*, 524 U.S. 321 (1998) ("This incentive [under 28 U.S.C. § 524(c)] enhances the need for close scrutiny of *in rem* forfeitures."); *United States v. Twelve Thousand, Three Hundred Ninety Dollars ($12,390)*, 956 F.2d 801, 807 n.6 (8th Cir. 1992) (Beam, J., dissenting) (stating that the Justice Department's Assets Forfeiture Fund "leads some observers to question whether we are seeing fair and effective law enforcement or an insatiable appetite for a source for increased agency revenue").

(holding exclusionary rule applies to civil-forfeiture proceedings).  As explained in Section II, the deficient affidavit cannot be saved by relying on the good-faith exception to the exclusionary rule.

I.     **THE SEARCH OF CHARLES'S CELL PHONE VIOLATED THE FOURTH AMENDMENT BECAUSE THE AUTHORIZING WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE.**

The warrant to search Charles's cell phone was not supported by probable cause.  *See United States v. Helton*, 314 F.3d 812, 819–20 (6th Cir. 2003) (suppressing evidence after warrant was not supported by probable cause).  When assessing whether an affidavit contains sufficient evidence to establish probable cause to issue a search warrant, the issuing magistrate must determine "whether, given all the circumstances set forth in the affidavit[ ], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Carpenter*, 360 F.3d at 594 (quoting *Gates*, 462 U.S. at 238–39).  This requires "a 'nexus between the place to be searched and the evidence sought.'"  *Id.* (citation omitted).  A nexus is established through "particularized facts demonstrating a fair probability that evidence of a crime will be located" in one place as opposed to another.  *McPhearson*, 469 F.3d at 524 (citation and internal quotation marks omitted).  Generally, the probable cause inquiry is limited to the four corners of the affidavit.  *United States v. Laughton*, 409 F.3d 744, 752 (6th Cir. 2005).  However, where the affidavit omits material facts, the omitted facts must be considered in the probable cause determination.  *West*, 520 F.3d at 611 ("[W]e are required to analyze the affidavit 'including the omitted portions and determine whether probable cause still exists.'") (citation omitted).

Here, the Boyd Affidavit completely fails to establish probable cause to believe that evidence of drug trafficking would be located on Charles's cell phone.  Even if it did, material facts omitted from the Boyd Affidavit defeat that showing of probable cause.

7

**A.  The Facts Contained in the Boyd Affidavit Fall Woefully Short of Establishing Probable Cause That Evidence of Drug Trafficking Would Be Found on Charles's Cell Phone.**

Taken together, all the facts contained in the Boyd Affidavit fall far short of establishing probable cause to believe that Charles was engaged in drug trafficking.  Specifically, the Boyd Affidavit relies on (1) Charles's travel itinerary; (2) the amount and way in which the currency was bundled; and (3) the odor of marijuana.  At most, these facts only establish probable cause that Charles was a marijuana user, which is insufficient as a matter of law to search his cell phone for evidence of drug trafficking.  *See McPhearson*, 469 F.3d at 524 (holding fact that defendant was arrested for a non-drug offense with a user quantity of drugs on his person did not establish probable cause of drug trafficking).

After discussing the probative value of each of these three sets of facts, this section examines the totality of facts contained in the Boyd Affidavit and concludes it falls short of establishing even reasonable suspicion, much less probable cause.  *See United States v. Saperstein*, 723 F.2d 1221, 1228 (6th Cir. 1983) (analyzing facts distinctly because while "it is the overall effect of a person's behavior which gives rise to reasonable suspicion, this Court has still deemed certain behavior characteristics inherently unsuspicious and, thus, entitled to no weight in the calculation").

**1.  Charles's Travel Itinerary Is Not Suspicious and Cannot Be Given Any Weight in the Probable-Cause Calculus.**

Charles's travel itinerary is not inherently suspicious and is not entitled to any weight in calculating probable cause.  The Boyd Affidavit states that Charles "purchased a one-way trip ticket on 02/16/2014 and planned to travel on 02/17/2014, from a known drug user city/state Cincinnati, OH to a known Source city/state Orlando, FL."  (Aff. Search Warrant at 3.)  Because

8

these facts—a late-purchased,[9] one-way ticket between two major cities—"describe a very large category of presumably innocent travel[ ]," they are not probative. *Reid v. Georgia*, 448 U.S. 438, 441 (1980) (per curiam).

Standing alone, buying a one-way ticket close to the departure time is "facially innocent." *United States v. $23,000 in U.S. Currency*, 54 F.3d 777, No. 94-6100, at *1 (6th Cir. May 15, 1995) (unpublished op.).[10] As the Sixth Circuit has observed, "no law requires . . . that tickets must be purchased well in advance of a trip." *United States v. $30,000 in U.S. Currency*, 30 F. App'x 473, 482 (6th Cir. 2002) (unpublished op.) (per curiam). Even Agent Conrad discounted the importance of this fact, testifying that there was nothing particularly suspicious about a one-way ticket in light of Charles's plan to stay in Cincinnati for an undetermined length of time. (Conrad Dep. 190:23–91:09.) Indeed, the cheapest flights between Cincinnati and Orlando are structured as one-way fares. *See* Decl. Gary Leff ¶ 12–13 (describing switch from round-trip to one-way fare structures resulting from competition by discount carriers).

Even when considered with other facts, a late-purchased one-way ticket is not probative because Charles gave his own name when booking the flight (not an alias) and identified himself to Agent Conrad and Detective Boyd. For example, in *United States v. Cotton*, the Sixth Circuit found that buying a one-way ticket with cash immediately before a flight from a drug source city did not even amount to reasonable suspicion of drug trafficking where defendant gave his name and address when booking, despite his attempting to hide the fact that he was traveling with someone else and exhibiting other evasive and suspicious behavior. 928 F.2d 405, Nos. 89-

---

[9] As noted *supra* at 3–4, the ticket was, in fact purchased ***several*** days before the flight.

[10] In *United States v. $23,000*, even with the additional facts of a cash purchase, the failure to provide a phone number, and refusal to present identification—all of which are absent here—there was only reasonable suspicion sufficient to seize luggage at the airport. *Id.*

6291, 90-5080 (6th Cir. Mar. 12, 1991) (unpublished op.).  Similarly, in *United States v. $40,000 in U.S. Currency*, the district court held:

> [O]f extremely limited probative value is the fact that claimant bought a one-way ticket to Fort Lauderdale in cash . . . [T]his fact . . . adds very little to the probable cause equation and does not aid the Government very much in meeting its probable cause burden.  This is so particularly because claimant purchased the ticket in his own name, which largely counteracts the anonymity provided by the cash purchase of an airplane ticket.  Claimant was traveling under his own name, rather than an alias, and produced identification that confirmed his identity.

999 F. Supp. 234, 238–39 (D.P.R. 1998) (rejecting idea that so-called "drug courier" profile establishes probable cause).

Moreover, the Sixth Circuit has repeatedly cautioned against giving any weight to travel routes between designated "drug" cities because "every major city in this country is known for some sort of drug activity."  *$30,000 in U.S. Currency*, 30 F. App'x at 482; *see also United States v. Townsend*, 305 F.3d 537, 543 (6th Cir. 2002) (characterizing officer's analysis of this kind of fact as "makeweight"); *United States v. Saperstein*, 723 F.2d 1221, 1228 (6th Cir. 1983) (traveling to and from a drug source city is "innocent behavior trait" "entitled to no weight").  Detective Boyd admitted as much.  During his deposition, he testified that every city in the United States would be a known drug user city while every city in California, Texas, Florida, Michigan, New York, Texas, and Washington would qualify as a known drug source city.  (Boyd Dep. 130:22–133:15.)  This kind of testimony from law enforcement has been so consistent as to make the Sixth Circuit "wonder whether there exists any city in the country which a DEA agent will not characterize as either a major narcotics distribution center or a city through which drug couriers pass on their way to [one]."  *United States v. Andrews*, 600 F.2d 563, 566–67 (6th Cir. 1979).[11]

---

[11] *See also* U.S. Drug Enforcement Admin., *2015 National Drug Threat Assessment Summary*, at vi–viii, 8, 13 (2015), *available at* http://www.dea.gov/docs/2015%20NDTA%20Report.pdf (discussing

Thus, Charles's travel itinerary is not inherently suspicious and does not enter the probable-cause calculus.

### 2.   The Fact That Charles Was Carrying $11,000 Kept Neatly in Order With Rubber Bands Is Not Probative.

Next, the Boyd Affidavit states that $11,000 "was rubber-banded together in what appeared to be $1,000.00 bundles."  (Aff. Search Warrant at 3–4.)  This is not probative evidence as to whether Charles was trafficking drugs.

Currency is not contraband.  *$30,000 in U.S. Currency*, 30 F. App'x at 480.  And $11,000 in cash is not an amount large enough to raise suspicion of drug trafficking.  *See United States v. $5,000 in U.S. Currency*, 40 F.3d 846, 850 (6th Cir. 1994) ("[F]ifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity.").[12]

Rather, what is probative is that Charles was forthcoming with the officers, volunteering that he was carrying $11,000 in cash and cooperating with the officers by taking it out of his pockets and placing it on the table in public at the airport gate.  *See $30,000 in U.S. Currency*, 30 F. App'x at 482 ("Younes . . . acknowledged carrying a large sum of cash when asked, stated it

---

cocaine and heroin trafficking through the East Coast and the Northeast, marijuana and MDMA operations on the West Coast, heroin overdoses in the Midwest, Southwestern methamphetamine smuggling, MDMA importation across the Canadian border, PCP's presence in DC and Los Angeles, and prescription-drug abuse in the Southeast).

[12]  *See also United States v. $191,910 in U.S. Currency*, 16 F.3d 1051, 1072 (9th Cir. 1994) ("[A]lthough we have considered the presence of a large amount of money, when accompanied by additional factors pointing to drug activity, to be evidence that the money was drug-related, we have never reached this conclusion when the sum of money involved was as small as the $15–20,000.00 involved here."); *United States v. Currency $11,331*, 482 F. Supp. 2d 873, 884 (E.D. Mich. 2007) ("[T]he amount of money itself is not evidence that [the claimant] intended to buy drugs with it.  Only very large amounts of money have been found suspicious when the person in possession was unable to account for its source.  Here, the amount is only $10,000."); *United States v. Twenty One Thousand Dollars ($21,000) in United States Postal Money Orders and Seven Hundred Eighty-Five Dollars ($785) in U.S. Currency*, 298 F. Supp. 2d 597, 603 (E.D. Mich. 2003) ($21,785 does not rise above mere suspicion); *United States v. One Lot of U.S. Currency Totaling $14,665*, 33 F. Supp. 2d 47, 53 (D. Mass. 1998) ("[T]he amount of money here, while not insubstantial, is quite a bit less than the sums often associated with drug transactions.").

11

was his own money, and removed it from his pants' pocket.  None of this is [suspicious] . . ."); *United States v. Ten Thousand Seven Hundred Dollars and No Cents in U.S. Currency*, 258 F.3d 215, 232 (3d Cir. 2001) (finding it "significant that claimants did not lie about the amount of cash they possessed" and weighing this consideration "in claimant's favor in the probable cause calculus"); *$40,000 in U.S. Currency*, 999 F. Supp. at 237 ("[W]e find it probative that claimant made no attempt to conceal the currency in his person . . . . He . . . informed [the Agent] of the quantity of cash that he was carrying and made no attempt to lie to the officer regarding the amount of money that he was carrying.").

Moreover, the fact that the money was kept organized using rubber bands is not particularly probative, as is it not "unique to the drug trade."[13] *Ten Thousand Seven Hundred Dollars and No Cents in U.S. Currency*, 258 F.3d at 232–33 (finding no evidence that concealed cash, "rubber-banded in large bundles" signifies drug trafficking and so weighing that factor as neutral); *United States v. $24,700 in U.S. Currency*, No. 2:15-CV-1264, 2015 WL 4647978, at *4 (D.N.J. Aug. 5, 2015) ("[T]he currency's placement in rubber bands [is not] persuasive on its own as to a purported nexus with narcotics activity.").  In *United States v. One Lot of U.S. Currency Totaling $14,665*, the court concluded that the government's theory that "money is likely linked to drug distribution because it is bound by a rubber band" didn't "stretch quite [as] far" on its own, or under the totality of circumstances, to establish probable cause of drug trafficking:

> If one is carrying a large sum of cash currency, for whatever reason, using a rubber band to keep it in order is simple and effective.  I do not doubt that drug couriers and dealers use rubber bands to bundle their ill-gotten gains.  However,

---

[13] Charles's money was not wrapped in plastic or otherwise packaged to conceal odors, which would be more indicative of drug trafficking.  *See United States v. $32,000 in U.S. Currency*, No. CV06-1766-PHX-DGC, 2007 WL 1297098, at *3 (D. Ariz. Apr. 30, 2007) (stating "[t]he cash was held in Claimant's pockets, and was not concealed in a manner traditionally associated with drug crimes," and contrasting two cases in which money was wrapped in cellophane or plastic wrap).

drug dealers also presumably use belts to hold up their trousers; under the government's analysis, if [the claimant] was wearing a belt at the time of the seizure, it would suggest his involvement with illegal activity.

33 F. Supp. 2d 47, 54 (D. Mass. 1998).  Thus, the fact that Charles used the "simple and effective" means of rubber-banding his money to keep it in order is not probative of drug trafficking, as it is wholly consistent with innocent behavior.

### 3.  The Odor of Marijuana Does Not Establish Probable Cause to Search Charles's Cell Phone for Evidence of Drug Trafficking.

Leaping from marijuana odor to drug trafficking (rather than drug use) is like leaping from a charcoal scent to arson (rather than barbecue).  According to the Boyd Affidavit, a "Source of Information" stated that Charles's "two checked bags had a very strong odor of marijuana emitting from them."  (Aff. Search Warrant at 3.)  The Boyd Affidavit also stated that Charles's "carry-on bag had a very strong odor of [m]arijuana emitting from it."  (*Id*. at 4.) Finally, the Boyd Affidavit notes that a dog "showed a positive alert to the presence of narcotics on the currency."  (*Id*.)  A lingering odor of marijuana does not establish probable cause to search Charles's cell phone for evidence of drug trafficking.

First, there is no nexus between the odor of marijuana and Charles's cell phone.  There is no reason to believe from the odor of marijuana that drugs (or evidence of drugs) would be found on the cell phone.  On this point, *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006), is controlling.  In *McPhearson*, officers arrested the defendant on a simple assault warrant outside his home.  *Id*. at 520.  While performing a pat-down search incident to the defendant's arrest, an officer found 6.4 grams of crack cocaine inside the defendant's front pocket.  *Id*.  After the defendant refused permission to search his home, the officers obtained a search warrant from a juvenile court judge based on the user quantity of drugs discovered during the arrest.  *Id*. at 521. After the defendant moved to suppress evidence discovered during the search of his home, the

13

district court granted the motion, stating, "I don't think I can conclude that there was any evidence presented to [the juvenile court judge] that there were drugs in the house." *Id*. at 522. The Sixth Circuit affirmed:

> The affidavit in this case did no more than state that [the defendant] who resided [at a specific address] was arrested for a non-drug offense with a quantity of crack cocaine on his person. These averments were insufficient to establish probable cause because they do not establish the requisite nexus between the place to be searched and the evidence to be sought.

*Id*. at 524. The Sixth Circuit went on to reject the government's inference that the defendant's arrest outside his home with drugs raised "a fair probability that his residence would contain evidence of wrongdoing." *Id*. (distinguishing cases in which affidavit also contained "independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes"). *See also United States v. Goward*, 188 F. App'x 355, 360 (6th Cir. 2006) (unpublished op.) (per curiam) ("[I]t would be inappropriate for officers who had verifiable evidence of possession of small amounts of drugs for personal use, without further indication of any wrongdoing occurring . . . to infer a reasonable nexus between that criminal activity and the existence of related criminal activity at the residence.").

Here, the United States' case for probable cause is even weaker than in *McPhearson* and *Goward*, because the Boyd Affidavit does not claim that any drugs were actually found. (To the contrary, police did not find any drugs on Charles's person, carry-on bag, or checked luggage after a thorough search.) If the presence of user quantities of drugs on an individual is inadequate to demonstrate probable cause to search a person's home for evidence of drug trafficking, then the mere lingering odor of marijuana on Charles's possessions must also be inadequate to demonstrate probable cause to search Charles's cell phone.[14]

---

[14] Indeed, the Supreme Court's concern in *Riley*, *see supra* at 5 and n.6, was borne out in this case. Charles's entire life was chronicled on his cell phone, which contained over 1000 pictures, including nude

This conclusion is buttressed by *In re Search of Certain Cell Phones*, 541 F. Supp. 2d 1 (D.D.C. 2008). There, the court rejected the inferential leap from the presence of individuals in a garage where a "substantial quantity" of drugs were found to the "conclu[sion] that there is, *ipso facto*, a reasonable likelihood that [those individuals] have used their cell phones to sell drugs, thus justifying the search of its entire contents." *Id*. at 2. This was true even though a police officer represented that, in his experience, drug traffickers commonly use cell phones to communicate with each other, suppliers, and customers. *Id*. Nevertheless, the court stated:

> But, even if I credit that experience, I would to have to conclude in every instance that the ownership of premises where drugs are found in itself justifies the search of the entire contents of the owner's cell phone, even though there is no indication that the owner ever used the phone in any way to facilitate drug trafficking.

*Id*. Here, the Boyd Affidavit says even less.

The Boyd Affidavit fails to state any facts that would lead one to reasonably conclude that evidence of drug trafficking would be found on Charles's cell phone. *See United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (uncorroborated allegation that defendant is a drug dealer is "insufficient to tie the alleged criminal activity to the defendant's residence"). The Affidavit does not contend that the cell phone was a "burner." *See, e.g.*, *United States v. Ramos-Rodriguez*, 809 F.3d 817, 826 (5th Cir. 2016) (per curiam) (noting agent's testimony that "drug smugglers use 'burner' cell phones that have virtually no history or personal information attached to the phone"); *United States v. Fiasche*, 520 F.3d 694, 695 n.1 (7th Cir. 2008) ("Those who watch the acclaimed HBO hit series, *The Wire,* know that these phones (usually called 'burners') are difficult to trace and a favored tool of drug dealers."). It does not contend that the cell phone was one of many in Charles's possession. *See, e.g.*, *United States v. Russian*, No. 14-

---

images of third parties. *See Riley*, 134 S. Ct. at 2490 ("[M]any of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate.").

10018-01, 2015 WL 1863333, at *5 (D. Kan. Apr. 23, 2015) (noting affidavit stated that "distributors of controlled substances frequently carry more than one phone"). And it does not even contain the bare assertion—rejected by the court in *In re Search of Certain Cell Phones*— that drug traffickers generally use cell phones.

Second, believing Charles is a drug ***user*** does not give probable cause to believe he is a drug ***dealer***. Courts have consistently recognized that being a drug user does not equate to being a drug trafficker. *See, e.g.*, *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1693 (2013) (holding that handing out a small amount of marijuana for free is not trafficking); *United States v. Couch*, Cr. No. 13-03, 2013 WL 6095512, at *3–*4 (E.D. Ky. Nov. 20, 2013) (distinguishing between probable cause of ***possession and cultivation*** of marijuana and ***trafficking***). Moreover, probable cause cannot be inferred from one crime to another, even if they are related. *See, e.g.*, *United States v. Hodson*, 543 F.3d 286, 287–88, 293 (6th Cir. 2008) (holding officer could not rely on an affidavit's digital evidence of child molestation in searching for child pornography on the same computer); *United States v. Bethal*, 245 F. App'x 460, 468 (6th Cir. 2007) (refusing to infer a nexus between drive-by shooting and home possession of guns).

Consequently, evidence of drug use does not constitute probable cause of drug trafficking. *Compare McPhearson*, 469 F.3d at 527 (refusing to infer a nexus between possessing crack cocaine upon stepping outside a house and finding evidence of drug trafficking inside the house); *Goward*, 188 F. App'x at 360 (observing obvious difference between a known drug dealer and a drug user) *with United States v. Eiland*, No. CRIM.04-379, 2006 WL 516743, at *12 (D.D.C. Mar. 2, 2006) (finding a nexus to a cell phone because of physical surveillance and wiretaps indicating that the defendant was a trafficker); *United States v. Wiseman*, 158 F. Supp. 2d 1242, 1249 (D. Kan. 2001) (finding a nexus to a cell phone because the defendant had a

16

hidden meth lab).  Thus, neither Family Judge Bramlage below, nor this Court may infer a nexus between the crime of drug use and the different, if similar, crime of drug trafficking.

Third, the dog alert on the currency does not add anything to the probable-cause analysis. It merely points to the fact that Charles's possessions smelled like marijuana, which, as discussed *supra*, does not give probable cause to search his cell phone.  Moreover, as the Sixth Circuit has repeatedly cautioned, dog alerts on currency are not reliable because drug residue contaminates 96-97% of currency in general circulation.  *United States v. $118,170 in U.S. Currency*, 69 F. App'x 714, 716 (6th Cir. 2003) ("[C]ourts have been reluctant to rely too heavily upon drug detection dog alerts to contaminated money because of evidence that there is widespread contamination of currency in circulation.") (citation and internal quotation marks omitted); *United States v. $5,000 in U.S. Currency*, 40 F.3d 846, 849 (6th Cir. 1994) (collecting authorities).[15]

In sum, the lingering odor of marijuana cannot establish probable cause to search Charles's cell phone for evidence of drug trafficking, as discussed more fully below.

### 4. The Totality of Facts Contained in the Boyd Affidavit Fails to Add Up to Probable Cause to Search Charles's Cell Phone.

Taken together, the facts do not amount to probable cause.  As explained above, Charles's travel itinerary is given no weight and does not enter the probable cause equation. Similarly, the fact that Charles rubber-banded $11,000 in cash has no probative value.  All that remains is the odor of marijuana.

---

[15]  To the extent this Court disagrees and weighs the dog alert on the currency in determining probable cause, claimant must be afforded an opportunity to contest the reliability of the dog alert, including the adequacy of the certification and training program.  *See Florida v. Harris*, 133 S. Ct. 1050, 1057 (2013); *United States v. Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars*, --- F. Supp. 3d ---, No. 03 C 3644, 2015 WL 5212055, at *3 (N.D. Ill. Feb. 11, 2015) ("[*Harris*] plainly contemplated expert challenges to the reliability of dog alerts and, moreover, said nothing that can be read to preclude any sort of challenge to . . . dog alerts to currency specifically.").

This pales in comparison to the kind of evidence that constitutes probable cause to search cell phones for evidence of drug trafficking.  Other cases have required large quantities of drugs, reliable and verifiable statements from confidential informants, or other evidence that an individual is a ***known*** drug trafficker.  *See, e.g.*, *United States v. Herevia*, Cr. No. 13-639, 2014 WL 4784321 (D. Md. Sept. 23, 2014) (finding probable cause to search cell phone where affidavit stated police found eighteen kilograms of cocaine and $30,000 in cash); *United States v. Zaavedra*, No. 12-CR-156, 2013 WL 6438981 (N.D. Okla. Dec. 9, 2013) (upholding cell phone search based on discovery of 9.5 pounds of methamphetamine); *United States v. Jauregui*, Cr. No. 10-272-04, 2011 WL 753120, at *3 (D. Minn. Feb. 9, 2011) (magistrate op.), *adopted by* 2011 WL 738307 (D. Minn. Feb. 24, 2011) (finding probable cause to search cell phone based on confidential informant and discovery of a pound of crystal meth); *United States v. Garcia-Aleman*, No. 1:10-CR-29, 2010 WL 2635071, at *12 (E.D. Tex. June 9, 2010) (magistrate op.), *adopted by* 2010 WL 2635073 (E.D. Tex. June 30, 2010) (finding probable cause for cell phone search because the defendant's vehicle had cocaine in hidden compartments); *United States v. Meador*, No. 1:06 CR 134, 2008 WL 4922001, at *14 (E.D. Mo. Jan. 7, 2008) (magistrate report and recommendation) (finding probable cause for cell phone search because the defendant admitted trafficking and police found marijuana in his vehicle).

Here, because no large quantities of drugs or other strong indicators of drug trafficking were found, there was no probable cause to search the cell phone for evidence of drug trafficking.  Thus, the Boyd Affidavit is insufficient on its face.

**B.      Even if the Boyd Affidavit Contains Sufficient Facts to Establish Probable Cause of Drug Trafficking, Facts Omitted from the Affidavit But Known to Detective Boyd at the Time of the Warrant Application Defeat Probable Cause.**

Detective Boyd omitted three key facts that would have negated any probable cause established by his affidavit:  (1) No drugs, drug paraphernalia, or any contraband were discovered, despite a thorough search of Charles's person and luggage; (2) Charles admitted to smoking marijuana earlier that day; and (3) Charles explained that he received money from the government due to his mother's status as a disabled veteran.  Because the Boyd Affidavit omitted these material facts known to Detective Boyd at the time the affidavit was sworn, this Court is required to include them to determine whether probable cause still exists.  *See United States v. West*, 520 F.3d 604, 611–12 (6th Cir. 2008) (finding affidavit that omitted facts was insufficient to support probable cause).  These omitted facts cut against finding probable cause for two reasons.

First, although the Boyd Affidavit makes much hay out of the lingering odor of marijuana, the twin facts that no drugs were actually found and that Charles admitted to smoking marijuana earlier in the day undermine, rather than confirm, the probative value of the smell of marijuana.  As an initial matter, the Boyd Affidavit deliberately obscures how open, honest, and forthcoming Charles was throughout the encounter, a factor courts give significant weight.  *See United States v. Ten Thousand Seven Hundred Dollars and No Cents in U.S. Currency*, 258 F.3d 215, 232 (3d Cir. 2001) (weighing honesty "in claimant's favor in the probable cause calculus"); *United States v. $40,000 in U.S. Currency*, 999 F. Supp. 234, 237 (D.P.R. 1998) ("[W]e find it probative that claimant made no attempt to conceal the currency in his person . . . . He . . . informed [the Agent] of the quantity of cash that he was carrying and made no attempt to lie to the officer regarding the amount of money that he was carrying.").  Moreover, as discussed *supra*

19

at 16–17, the distinction between personal drug use and drug trafficking guides courts in determining probable cause, particularly when analyzing cell-phone search warrants, as they find probable cause only where the evidence points to drug trafficking. For instance, in *United States v. Jefferson*, the district court found probable cause to search a cell phone for evidence of trafficking because it was found at a criminal group's drug den and marijuana grow site. No. 14-20119, 2015 WL 3576035, at *4 (E.D. Mich. June 5, 2015). And in *United States v. Reynolds*, the court found probable cause to search the defendant's five cell phones for evidence of trafficking because he was carrying all of them when he was arrested with 5200 grams of marijuana. No. 3:08-CR-143, 2009 WL 1588413 (E.D. Tenn. June 4, 2009) (magistrate report & recommendation). In contrast, no drugs—not even user quantities—were found here. Nor did the police discover any indicia of drug trafficking, like scales. Here there is only evidence of personal marijuana use, which is insufficient to establish probable cause of drug trafficking.

Second, the Boyd Affidavit omits the fact that when Agent Conrad asked Charles where the currency came from, Charles responded "that his mother [was] disabled from the military and that he receives money from the government because of that fact." (Conrad Aff. ¶ 6.) The Boyd Affidavit not only leaves out this fact, but misstates that Charles informed the officers that "his mother gave him the money." (Aff. Search Warrant at 3.) It further states: "TFA Conrad asked him what he did for work and how much he made a year and he stated that he was unemployed but attended school." (*Id.*) Detective Boyd then states that he informed Charles that "due to his deceptive story" and the smell of marijuana, the officers were seizing his money and cell phone.[16] (*Id.* at 4.) These facts do not equal probable cause.

---

[16] As noted above, the officers also seized Charles's iPad.

As an initial matter, there is nothing about Charles's explanation for the money that can reasonably be characterized as "deceptive."  At most, the statements in the Boyd Affidavit provide only an "inchoate and unparticularized suspicion" that as an unemployed college student, Charles would not have been able to save $11,000.  *See United States v. $5,000 in U.S. Currency*, 40 F.3d 846, 848–49 (6th Cir. 1994) (upholding finding that inconsistencies in passenger's story about purpose of trip and when last saw traveling companion did not amount to probable cause); *see also United States v. Saperstein*, 723 F.2d 1221, 1223, 1229–30 (6th Cir. 1983) (finding no reasonable suspicion where defendant's ticket mismatched his identification and he claimed to not know either his suitcase's combination or what was inside); *United States v. Fifty-Three Thousand Eighty-Two Dollars in U.S. Currency, $53,082*, 985 F.2d 245, 247, 249 (6th Cir. 1993) (upholding finding of no reasonable suspicion when individuals were nervous, had small gym bags as their only luggage, sat apart from other passengers, had return tickets for the next day, and carried $45,000 in their socks).

Charles's further explanation that his "life savings" consisted of Chapter 35 educational benefits from the government due to his mother's disability pushes this "inchoate and unparticularized suspicion" even further from the goal post of probable cause.  *See Sykes v. Anderson*, 625 F.3d 294, 307–08 (6th Cir. 2010) (finding no probable cause for an arrest because of material omission from affidavit); *Ten Thousand Seven Hundred Dollars and No Cents in U.S. Currency*, 258 F.3d at 232 ("[T]he amount of money in claimants' possession is consistent on its face with their statement that they intended to purchase a car, a factor that weighs in their favor in evaluating the totality of the circumstances.").

Because the search warrant was not supported by probable cause, the search of Charles's cell phone violated the Fourth Amendment.  As discussed below, the evidence must be

21

suppressed because the deficiencies of the Boyd Affidavit cannot be saved by relying on the magistrate's approval of the warrant under the good-faith exception.

## II.   THIS COURT SHOULD EXCLUDE THE UNCONSTITUTIONALLY OBTAINED DIGITAL PICTURES BECAUSE THE GOOD-FAITH EXCEPTION DOES NOT APPLY.

This Court should exclude the unconstitutionally obtained photographs and text messages because no objectively reasonable, well-trained officer would have relied on the warrant.

Under the so-called "good-faith exception," evidence obtained in violation of the Fourth Amendment will not be excluded if it was "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984); *United Sates v. Savoca*, 761 F.2d 292, 294 n.1 (6th Cir. 1985) (adopting the term "good faith exception" as a "short-hand description" for *Leon*'s "reasonable reliance" language).  Lest this exception swallow the rule, the Supreme Court was careful to clarify its contours:  "[I]t is clear that in some circumstances, the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922.  As relevant here, suppression remains the appropriate remedy when an affidavit contains material omissions with reckless disregard for the truth or is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 923.

The Boyd Affidavit fits these circumstances in three ways.  First, it omitted material facts known to Detective Boyd at the time he submitted the warrant application.  Second, its allegation of a nexus between drug trafficking and the cell phone was so bare bones that no reasonable officer would have relied on it.  Finally, it so obviously did not establish probable cause.

### A.    Good Faith Does Not Apply Because Detective Boyd Omitted Material Facts from the Affidavit.

Because Detective Boyd omitted material facts, known to him at the time he submitted the warrant application, the United States cannot take advantage of the good-faith exception.  As noted *supra* at 4, the Boyd Affidavit neglected to state that: (1) Charles admitted to smoking marijuana on the way to the airport; (2) Charles explained the source of his money; and (3) no drugs, drug paraphernalia, or contraband was discovered in any of Charles's bags after an exhaustive search.

To defeat good faith, an omission must be material and made with reckless disregard for the truth.  *United States v. West*, 520 F.3d 604, 611–12 (6th Cir. 2008).  An omission is material if, when included alongside the information in the affidavit, it defeats probable cause.  *See Sykes*, 625 F.3d at 305; *Mechler v. Hodges*, No. C-1-02-948, 2005 WL 1406102, at *10 (S.D. Ohio June 15, 2005) ("This omitted information is 'material' because the magistrate would not have had probable cause to issue the warrant . . . .").  Additionally, recklessness can be inferred from the mere fact of omitting material information.  *See West*, 520 F.3d  at 611 ("The fact that the affidavit prepared by Steger did not accurately reflect the facts known to him at the time the affidavit was sworn evinces a reckless disregard for the truth.").  Here, the three omissions were material, as discussed *supra* at 19–22.  Furthermore, they were made with reckless disregard for the truth.

First, the Boyd Affidavit recklessly omitted the fact that Charles admitted to smoking marijuana earlier that day—a credible alternative explanation.  *See United States v. 1328 N. Main St.*, 713 F. Supp. 1495, 1510–11 (S.D. Ohio 1988) (holding omissions reckless where they provided evidence that a doctor was legally, not illegally, prescribing drugs).  Charles's admission is presumed credible because it incriminated him.  *See, e.g.*, Fed. R. Evid.

804(b)(3)(A) (acknowledging statements against criminal interests as a hearsay exception, thereby acknowledging their trustworthiness). It offered an alternative explanation for why his possessions smelled like marijuana. For instance, in *Wolgast v. Tawas Police Authority*, police officers accused the plaintiff of phoning in a bomb threat. No. Civ. 05-10278, 2006 WL 2583228, at *13 (E.D. Mich. Sept. 7, 2006). The affidavit for his arrest warrant stated that he was riding his bicycle past the payphone from which the call was made. *Id.* However, the plaintiff offered a credible alternative explanation by telling the officers he had taken a different route. *Id.*

Second, the Boyd Affidavit omits the fact that Charles told the officers that he received money because his mom was a disabled veteran. Moreover, it affirmatively misstates Charles's explanation for the money as "his mother gave him the money." (Aff. Search Warrant at 3.) Therefore, just like the officer in *West*, Detective Boyd "knew that his affidavit was incomplete and misleading to the issuing magistrate, and as such, he cannot be held to have reasonably relied on the search warrant." 520 F.3d at 612.

Finally, omitting the fact that no drugs were found was material and at least reckless because it shows that subsequent investigation failed to confirm initial suspicions. For instance, in *West*, the affidavit stated that an informant told the affiant that the defendant drunkenly confessed to murder and left the body in a well, but failed to mention that the affiant could not corroborate the location of the alleged confession and did not locate the body or the well. *Id.* at 611. The Sixth Circuit held the omissions precluded finding good faith. *Id.* at 611–12. Likewise, in *Sykes v. Anderson*, the affidavit alleged that a purported store robbery was an inside job by employees, but failed to mention that videotape surveillance corroborated the employees' claim that two armed men entered the store. 625 F.3d at 301, 306. The Sixth Circuit found this

24

omission to be material and deliberate. *Id.* at 307. And, in *United States v. Jacobs*, the affidavit stated that a narcotics-detection dog "had shown an interest" in a package, but failed to inform the magistrate that the dog did not alert. 986 F.2d 1231, 1234–35 (8th Cir. 1993). This fact was "highly relevant," so any reasonable person could have foreseen that the judge would want to know it. *Id.* Accordingly, the good-faith exception did not apply. *Id.* at 1235.

Similarly, Detective Boyd's failure to include material facts in his affidavit supporting the warrant application precludes a finding of good faith.

### B.   The Boyd Affidavit Was So Bare Bones That No Reasonable Officer Would Have Relied on the Warrant.

"Affidavits that are 'so lacking in indicia of probable cause' have come to be known as 'bare bones' affidavits." *United States v. Laughton*, 409 F.3d 744, 748 (2005) (citations omitted). A magistrate's approval of a warrant application supported by a "bare bones" affidavit is impermissible as a "mere ratification of the bare conclusions of others." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1998) (quoting *Gates*, 462 U.S. at 239). This inquiry is "bound by the four corners of the affidavit." *Laughton*, 409 F.3d at 751–52 ("Whether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in that affidavit.").[17]

Under Sixth Circuit precedent, the Boyd Affidavit is a "bare bones" affidavit that strips the United States of the shield of good faith. *See, e.g.*, *Laughton*, 409 F.3d at 750–52 (rejecting

---

[17]  The Sixth Circuit noted that:

> To hold otherwise would clearly perch a reviewing court at the edge of the proverbial slippery slope, with courts forced to determine not only how much affiants knew, but also when and from whom they learned it. It would also lead to the very kind of subjectivity that the Supreme Court has repeatedly and expressly rejected.

*Laughton*, 409 F.3d at 752.

good faith due to bare-bones affidavit); *Weaver*, 99 F.3d at 1379–80 (same); *United States v. McPhearson*, 469 F.3d 518, 527 (6th Cir. 2006) (same).  "Bare bones" affidavits contain only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . . ."  *Weaver*, 99 F.3d at 1378.

There is nothing in the Boyd Affidavit that indicates a nexus to the cell phone, or why evidence of drug trafficking might be found on this phone as opposed to any other place.[18]  In this regard, the Boyd Affidavit merely states:

> . . . Detective Boyd discovered a cellular phone that is believed to contain drug trafficking information  . . . .  Affiant has undergone law enforcement training and training in drug trafficking investigations and believes that there is probable cause to believe that there is evidence related to drug trafficking located on this phone.

(Aff. Search Warrant at 4.)  These sole statements "connecting the crime to the [place to be searched are] so vague as to be conclusory or meaningless."  *McPhearson*, 469 F.3d at 527 (internal quotation marks omitted).  In *McPhearson*, the Sixth Circuit found that the bare averment that police found a small quantity of drugs in the defendant's pocket when he was arrested outside the home failed to even "establish the ***minimal nexus*** that has justified application of the good-faith exception in cases where the nexus between the place to be searched and the evidence to be sought was too weak to establish probable cause."  *Id.* at 527.

Moreover, the utter void of any connection between the criminal activity at issue and the place to be searched cannot be cured by generalized reference to training in law enforcement and drug-trafficking investigations.  To the contrary Detective Boyd's experience and training militates against finding objectively reasonable reliance on the warrant.  *See Laughton*, 409 F.3d 751 n.1 (noting that "[t]o the extent the [officer]'s experience can be considered in weighing the reasonableness of his reliance on the warrant, [ ] it would militate against finding good faith").

---

[18]  Indeed, the officers had also seized and were in possession of Charles's iPad but did not seek a search warrant for the iPad.

Finally, Detective Boyd cannot benefit from the good-faith exception because he was both the affiant and the officer executing the search warrant.  The Fifth Circuit has held that an officer who submitted an insufficient "bare bones" affidavit to the magistrate, and then executed the resulting warrant himself, could not have acted in objective good-faith reliance on the warrant.  *United States v. Barrington*, 806 F.2d 529, 532 (5th Cir. 1986) ("If one cannot use a bare bones affidavit and then rely on an ignorant colleague to conduct the search [as the Supreme Court cautioned in *Leon*], he cannot himself conduct the search based on his own bare bones affidavit.").  The magistrate's ratification of the bare bones Boyd Affidavit does not justify the good-faith exception.

### C.   The Lack of Probable Cause Was Obvious Enough to Preclude Good Faith.

Finally, the lack of probable cause here was so obvious that the good-faith exception does not apply.  *See United States v. Mosley*, No. 08-22, 2008 WL 1868012, at *6 (E.D. Ky Apr. 24, 2008) (finding lack of probable cause so "obvious" that good faith did not apply).  "Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude, that notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances."  *Leon*, 468 U.S. at 915.

As discussed previously, the only probative fact contained in the affidavit was the odor of marijuana.  As the legion of cases cited *supra* at 18 demonstrates, the smell of marijuana, which is only probative of drug use, is wholly insufficient to support probable cause to search for evidence of drug trafficking.  Indeed, the Boyd Affidavit barely rose to the level of reasonable suspicion.  *See United States v. Hopewell*, No. 1:08-CR-065, 2010 WL 1257578, *15–16 (S.D.

Ohio Mar. 31, 2010) (finding affidavit that depended heavily on incorrect assumption was "so lacking in indicia of probable cause as to render belief in its existence unreasonable").

Given this well-established precedent on the distinction between drug use and drug trafficking, this Court cannot conclude that Detective Boyd acted in good faith.  To the contrary, this is precisely the type of situation in which the exclusionary rule should apply—a situation in which the exclusion of evidence will deter future violations of the Fourth Amendment.  *See Leon*, 468 U.S. at 897.  Police may not scour through every aspect of someone's private life on their cell phone hunting for evidence of drug trafficking merely because the owner of the phone recreationally used marijuana.

## <u>CONCLUSION</u>

In sum, the warrant authorizing the search of Charles's cell phone was not supported by probable cause.  The only probative fact contained in the Boyd Affidavit was the smell of marijuana, which is insufficient to establish probable cause that there would be evidence of drug trafficking on Charles's cell phone.  Even if that fact did establish probable cause, Detective Boyd omitted the following material facts known to him at the time he submitted his affidavit: (i) no drugs or contraband were discovered despite a thorough search; (ii) Charles admitted to smoking marijuana earlier that day; and (iii) Charles explained the source of the money.  These facts are sufficient to defeat any probable cause.

Because the search violated the Fourth Amendment, evidence obtained from the cell phone must be suppressed.  The United States cannot benefit from the good-faith exception because the Boyd Affidavit: (i) contained material omissions; (ii) was so conclusory as to a nexus between the cell phone and drug trafficking as to be bare bones; and (iii) was so obviously

28

lacking in probable cause that no reasonable officer would have relied on it.  Therefore, this

Court should grant Claimant's Motion to Suppress.

Dated:  March 10, 2016

Respectfully submitted,

/s/ Darpana M. Sheth
Darpana M. Sheth*
Renée D. Flaherty*
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone:  (703) 682-9320
Fax:      (703) 682-9321
Email:  dsheth@ij.org
           rflaherty@ij.org
*Admitted pro hac vice*

Christopher D. Wiest (KBA 90725)
Chris Wiest, Attorney at Law, PLLC
25 Town Center Blvd., Suite 104
Crestview Hills, KY 41017
Mobile:  (513) 257-1895
Fax:       (859) 495-0803
Email:  chris@cwiestlaw.com

*Attorneys for Claimant*

29

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of March, 2016, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF CLAIMANT'S MOTION TO SUPPRESS CELL PHONE EVIDENCE** was served upon the CM/ECF system, which will provide notice of service upon all counsel and attorneys of record.


/s/ Darpana M. Sheth
Darpana M. Sheth