UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | Civil Action No. 2:14-cv-00125-WOB-JGW |
| $11,000 IN UNITED STATES CURRENCY | |
| Defendant, | |
| and | |
| CHARLES L. CLARKE, II | |
| Claimant. | |

MEMORANDUM IN SUPPORT OF CLAIMANT'S MOTION FOR
SPOLIATION SANCTIONS

INSTITUTE FOR JUSTICE
Darpana M. Sheth*
Renée D. Flaherty*
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax:    (703) 682-9321
Email: dsheth@ij.org
          rflaherty@ij.org
*Admitted pro hac vice

CHRIS WIEST, ATTORNEY AT LAW, PLLC
Christopher D. Wiest (KBA 90725)
25 Town Center Blvd., Suite 104
Crestview Hills, KY 41017
Mobile: (513) 257-1895
Fax:      (859) 495-0803
Email:   chris@cwiestlaw.com

*Attorneys for Claimant*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS .........................................................................................1

THE OFFICERS SEIZE CLARKE'S LIFE SAVINGS AT THE AIRPORT BASED CHIEFLY
ON THE ODOR OF MARIJUANA AND A DOG ALERT ...........................................................2

THE OFFICERS MAKE NO ATTEMPT TO PRESERVE THE ODOR ON THE LUGGAGE OR
THE CURRENCY AS EVIDENCE .................................................................................4

ARGUMENT ............................................................................................................6

I.     THE UNITED STATES FAILED TO PRESERVE THE LINCHPIN OF ITS FORFEITURE CASE ...........6

       A.  The United States Had a Duty to Preserve the Odors and the Currency .......................7

       B.  The United States Negligently and Knowingly Failed to Preserve Evidence ............ 10

       C.  The Destroyed Evidence Was Relevant......................................................12

II.    THIS COURT SHOULD DRAW ADVERSE INFERENCES OR EXCLUDE TESTIMONY
       REGARDING THE DESTROYED EVIDENCE .........................................................13

CONCLUSION........................................................................................................18

**TABLE OF AUTHORITIES**

**Cases**                                                                                   **Page(s)**

*Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) .......................................................11, 13, 14, 18

*Anderson v. Trombley*, 451 F. App'x 469 (6th Cir. 2011)............................................16

*Arch Ins. Co. v. Broan-NuTone, LLC*, 509 F. App'x 453 (6th Cir. 2012)....................................15

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540 (6th Cir. 2010).............................................. *passim*

*Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380 (6th Cir. 2013)......................................8, 10

*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013)..............................................6, 7, 13, 14, 15

*Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014)......................................................................17

*Jain v. Memphis Shelby Cnty. Airport Auth.*, No. 08-2119, 2010 WL 711328,
      (W.D. Tenn. Feb. 25, 2010).............................................................11, 12, 15

*Muntian v. Therrien*, No. 1:11-CV-515, 2012 WL 2367856 (W.D. Mich. June 21, 2012)...........16

*Ohio Cas. Co. v. Cox*, Civ. Action No. 11-334, 2014 WL 5106333
      (E.D. Ky. Sept. 25, 2014)............................................................................... *passim*

*One Beacon Ins. Co. v. Broad. Dev. Group, Inc.*, 147 F. App'x 535 (6th Cir. 2005) ...................12

*Res. Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002)......................................6

*Ross v. Home Depot USA Inc.*, No. 2:12-CV-743, 2014 WL 2805094
      (S.D. Ohio June 20, 2014) ........................................................................10, 12

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) ........................................................7

*Smith v. Berghuis,* No. 10-12562, 2013 WL 1858549 (E.D. Mich. May 2, 2013).......................16

*United States v. Funds in the Amount of One Hundred Thousand and
      One Hundred Twenty Dollars ($100,120)*, 127 F. Supp. 3d 879,
      (N.D. Ill. 2015)..........................................................................................9, 16

*United States v. Bryant*, 206 F. App'x 535 (6th Cir. 2006) .........................................................16

*United States v. Dye*, 538 F. App'x 654 (6th Cir. 2013)..............................................................16

*United States v. Franklin*, 298 F. App'x 477 (6th Cir. 2008) ......................................................16

*United States v. Hampton*, No. 1:05-CR-166, 2005 WL 3555507 (W.D. Mich. Dec. 27, 2005)..16

*United States v. Linton*, No. 89-1383, 899 F.2d 15 (6th Cir. 1990)................................16

*United States v. Rodriguez*, 596 F.2d 169 (6th Cir. 1979)..............................................16

*United States v. Smith*, 456 F. App'x 572 (6th Cir. 2012).............................................16

*United States v. Williams*, No. 15-5080, 2016 WL 424594 (6th Cir. Feb. 4, 2016)....................16

*United States v. Yarbrough*, 272 F. App'x 438 (6th Cir. 2007)........................................16

*United States v. Youngblood*, No. 05-80810, 2006 WL 1984054 (E.D. Mich. July 13, 2006) .....16

*United States v. Virginia*, 518 U.S. 515 (1996) .....................................................17

*Vodusek v. Bayliner Marine Corp.*, 71 F. 3d 148 (4th Cir. 1995) ................................18

*Welsh v. United States*, 844 F.2d 1239 (6th Cir. 1998) ...........................................11, 14

*Wiseman v. Lipinski*, No. 3:10-0250, 2012 WL 928739 (M.D. Tenn. Mar. 19, 2012)................15

**Codes and Rules**

18 U.S.C. § 983(a) ......................................................................................7

18 U.S.C. § 983(a)(2) ..................................................................................7

18 U.S.C. § 983(a)(3)..................................................................................7

E.D. Ky. Local Rule 7.1(a) ............................................................................1

**Other Authorities**

Asset Forfeiture & Money Laundering Sec., Crim. Div., U.S. Dep't of Justice,
     *Asset Forfeiture Policy Manual* (2007), *available at*
     https://www.justice.gov/sites/default/files/criminal/legacy/2010/04/11/policy07.pdf ..5, 11

Asset Forfeiture & Money Laundering Sec., Crim. Div., U.S. Dep't of Justice,
     *Asset Forfeiture Policy Manual* (rev'd ed. Mar. 22, 2014), *available at*
     http://www.justice.gov/sites/default/files/criminal-afmls/legacy/2014/05/23/
     policy-manual-2013rev.pdf...........................................................................5, 11

Off. of the U.S. Attorneys, *U.S. Attorney's Manual, Section 9-111.600 - Forfeiture/Seizure*, https://www.justice.gov/usam/usam-9-111.000-forfeitureseizure#9-111.600/ ...................5

Off. of the U.S. Attorneys, *U.S. Attorney's Manual, Section 9-111.600 - Seized Cash Management*, https://www.justice.gov/usam/ usam-9-111000-forfeitureseizure#9-111.600/ ....................................................................9

U.S. Dep't of Justice, Off. of the Inspector Gen., Audit of the Assets Forfeiture Fund and Seized Asset Deposit Fund Annual Financial Statements Fiscal Year 2014, *available at* https://oig.justice.gov/reports/2015/a1508.pdf#page=1 .................................6

Pursuant to Local Rule 7.1(a), Claimant Charles L. Clarke, II respectfully submits this Memorandum in Support of Claimant's Motion for Spoliation Sanctions.

## INTRODUCTION

The marijuana odor on Clarke's luggage and a drug-detection dog alert were the main reasons that Agent William Conrad and Detective Christopher Boyd seized Clarke's money. They thought so.  They told him so.  And they swore so.

But, inexplicably and contrary to various law-enforcement policies, the officers did nothing to preserve the alleged odor or the currency, even though they had ample opportunity to do so.  Despite knowing that the odor would dissipate, the officers failed to seize Clarke's bags and send them to a laboratory for analysis.  Nor did they retain the currency for testing after Agent Conrad's dog alerted to it.  Had the officers found an unidentified substance they believed to be narcotics, there is no question they would have preserved the substance and tested it to verify whether it was, in fact, narcotics.  There is no justification for the United States failing to do the same with the alleged marijuana odor or drug residue on the currency.

The United States should be sanctioned for its spoliation of evidence because it acted, at least, negligently and denied Clarke access to key evidence in this case.  Accordingly, Clarke asks for adverse inferences or, alternatively, for preclusion of any testimony related to the destroyed evidence.

## STATEMENT OF FACTS

An alleged odor of marijuana and a dog alert to the seized money are the linchpin to the United States' attempt to forfeit $11,000 in cash seized from Clarke at the Cincinnati/Northern Kentucky Airport.  However, the officers who seized Clarke's money took no steps to preserve the odor or the currency as evidence.

1

**THE OFFICERS SEIZE CLARKE'S LIFE SAVINGS AT THE AIRPORT BASED CHIEFLY ON THE ODOR OF MARIJUANA AND A DOG ALERT.**

On February 17, 2014, Clarke was awaiting his flight back home to Orlando, when he was approached by Cincinnati/Northern Kentucky Airport Police Detective Christopher Boyd[1] and Drug Enforcement Administration ("DEA") Task Force Agent William T. Conrad.[2] Clarke's encounter with these officers was captured by airport video surveillance,[3] but the United States failed to preserve relevant portions of the video.[4]

Unbeknownst to Clarke, the officers had received a tip that upon check-in Clarke's luggage had a "strong odor of marijuana."[5] Before leaving the counter, Agent Conrad ran his narcotics-detection dog past Clarke's checked luggage. The dog sniffed and alerted to each bag.[6] Agent Conrad testified that he did not smell anything when he first approached the bags but that they "stunk bad" after he picked them up.[7] Detective Boyd thought Clarke's carry-on bag also had a very strong odor of marijuana.[8]

Agent Conrad asked Clarke to explain why his checked luggage smelled like marijuana.[9] Clarke admitted to the officers that he smoked marijuana earlier that day.[10] On the last morning

---

[1] Detective Boyd is no longer a detective with the Airport Police Department. In April 2014, he became a patrol officer with the Newport, Kentucky Police Department. (U.S. Resp. Opp. Claimant's Mot. Suppress Cell Phone Evidence, Supp. Redacted Dep. Christopher Boyd, ECF No. 76-1 ("Boyd Dep.") 17:04–06, Jan. 20, 2016.) This memorandum shall refer to him as Detective Boyd.

[2] Aff. Search Warrant, ECF No. 67-4, at 3; Aff. William T. Conrad Supp. V. Compl. Forfeiture *In Rem*, ECF No. 1-2 ("Conrad Aff.") ¶ 4; Redacted Decl. Charles L. Clarke, II, Supp. Claimant's Mot. Summ. J., ECF No. 70-10 ("Clarke Decl.") ¶ 27; U.S. Resp. Opp. Claimant's Mot. Suppress Cell Phone Evidence, Supp. Redacted Dep. William Conrad, ECF No. 76-2 ("Conrad Dep.") 179:01–19, Jan. 21, 2016; Boyd Dep. 43:02–06.

[3] Conrad Dep. 217:15–18; Boyd Dep. 76:23–77:03.

[4] Detective Boyd had only requested a three-minute segment of the encounter to be preserved. Ex. A, Cincinnati/Northern KY Airport Police Incident/Offense Report, at USA00222.

[5] Aff. Search Warrant at 3; Conrad Aff. ¶ 3; Conrad Dep. 157:11–15; Boyd Dep. 56:23–57:02.

[6] Conrad Dep. 160:20–21, 164:17–23; Conrad Aff. ¶ 3.

[7] Conrad Dep. 163:01–164:08.

[8] Boyd Dep. 66:22–24; Aff. Search Warrant at 4.

[9] Conrad Aff. ¶ 7; Conrad Dep. 219:03–17.

[10] Clarke Decl. ¶ 29; Boyd Dep. 50:19–24; Conrad Dep. 219:03–17; Conrad Aff. ¶ 7.

he was in Cincinnati, Clarke had smoked marijuana inside the parked car that later took him to the airport with his luggage inside.[11]

Two years later, Detective Boyd and Agent Conrad asserted, for the first time, that they did not believe that Clarke's smoking marijuana would have accounted for the marijuana odor on his bags.[12]  Detective Boyd claimed that Clarke's bags smelled of raw marijuana, which indicated that Clarke was involved in trafficking.[13]  Detective Boyd also stated that raw marijuana "has a distinct smell as opposed to someone who just lit up a marijuana cigarette and smoked it,"[14] and that "all three bags smelling of raw marijuana would mean that all three bags would have had to have been in contact with raw marijuana, so I presumed that there's probably a large quantity in the bags at some point."[15]  Agent Conrad also asserted that Clarke's luggage smelled like raw marijuana,[16] but Clarke did not smell of marijuana.[17]  Agent Conrad posited that the marijuana odor was so strong that Clarke must have been carrying marijuana in bulk in his bags to sell in Cincinnati—at least two pounds of it.[18]  No marijuana (of any quantity) or any other drugs or contraband were found in any of Clarke's bags or on his person.[19]

The officers seized Clarke's $11,000 in life-savings, which he had been carrying on his person, for administrative forfeiture.[20]  They told him the odor on his bags was a main reason.[21] After Clarke's money was seized, Agent Conrad's drug-detection dog alerted to the currency.[22]

---

[11] Dep. Charles L. Clarke, II, ECF No. 72-1 ("Clarke Dep.") 52:20–54:02, Feb. 2, 2016; Clarke Decl. ¶ 26.
[12] *Id.* at 174:01–176:09.
[13] Boyd Dep. 52:19–53:03, 54:08–55:02, 68:23–69:01, 113:07–16.
[14] *Id.* at 54:17–22.
[15] *Id.* at 113:07–16.
[16] Conrad Dep. 268:12–14.
[17] *Id.* at 195:25–197:03, 298:19–20.
[18] *Id.* at 176:22–178:15, 267:21–268:14.
[19]  Boyd Dep. 46:17–25, 66:12–21.
[20] Aff. Search Warrant at 4; Clarke Decl. ¶ 30; Boyd Dep. 71:22–25; Conrad Dep. 309:9–13.
[21] Aff. Search Warrant at 4.
[22] *Id.*; Conrad Aff. ¶ 9.

It is unknown exactly what substance the dog alerted to, because he signals the same way for five different narcotic odors—marijuana, cocaine, heroin, methamphetamine, and ecstasy.[23]  The dog is trained to alert to the odor of even a trace amount of drugs left during a short exposure to a substance.[24]  The United States admits that the dog could have alerted to the smell of marijuana smoke on Clarke's luggage.[25]  Agent Conrad has never been trained on detecting the strength of narcotic odors.[26]

**THE OFFICERS MAKE NO ATTEMPT TO PRESERVE THE ODOR ON THE LUGGAGE OR THE CURRENCY AS EVIDENCE.**

The day after the seizure, Detective Boyd applied for a search warrant for Clarke's cell phone.  His affidavit stated that Clarke's "two checked bags had a very strong odor of marijuana emitting from them" and his "carry-on bag had a very strong odor of [m]arijuana emitting from it."[27]  The affidavit also cited the dog alert to the currency.[28]

Although Agent Conrad and Detective Boyd claimed that the smell of the luggage and the dog alert were important factors in deciding to seize the currency,[29] they did not take any steps to preserve this evidence.  Even though the officers were still in possession of the bags and the currency, they did not—as it is possible to do—seal the items and send them to a laboratory to conduct a parts-per-million analysis to verify the presence of narcotics.  Their failure to

---

[23] Conrad Dep. 121:25–122:10.
[24] *Id.* at 154:09–13; *see also id.* at 87:09–11, 108:21–22, 166:16–18.
[25] Flaherty Decl. Supp. Claimant's Mot. Summ. J. Ex. 2, ECF No. 70-4, Pl.'s Resps. Reqs. Admis. No. 41.
[26] Conrad Dep. 269:03–05.
[27] Aff. Search Warrant at 3–4.
[28] *Id.* at 4.
[29] Conrad Dep. 199:17–19 ("The main facts [we]re the K-9 hit, the strong smell. Everything else was kind of secondary at th[at] point."); *id.* at 273:24–274:02 (suspecting Mr. Clarke because "the strong odor coming from the bags that a person could smell and did smell, that's how we got to the situation to begin with, the smell on his carry-on bag . . . ."); *id.* at 303:08–11 ("Q: Is it fair to say that a majority of the factors you've just described as significant relate to Mr. Clarke's luggage and its smell? A: Very significant, yes."); *id.* at 174:01–04; *id.* at 164:09–16; Boyd Dep. 67:02–06 ("Q: . . . [W]hat did you think was suspicious about Mr. Clarke? . . . . A: That his bag smelled of marijuana . . . .").

preserve this evidence contradicted official policy.  It is standard operating procedure of the

Covington Police Department to "preserve every piece of relevant evidence in a case."[30]  And

Agent Conrad was trained to do exactly that.[31]  Moreover, the Department of Justice's Asset

Forfeiture Policy Manual states that "[t]here is a legal duty to preserve potentially relevant

evidence once a party reasonably anticipates litigation."[32]  The Attorney General has also

specified that seized cash that is to be used as evidence should be retained, especially when there

is "a traceable amount of narcotic residue on the bills."[33]

Despite these policies, Clarke's bags were never seized or tested.[34]  The United States did

not procure laboratory test results to confirm the presence of controlled substances on either the

luggage or the currency.[35]  Agent Conrad testified that he recognized that the bags were evidence

and that probable cause "was based very much on the . . . strong odor."[36]  But he still took no

actions to preserve them.[37]  Nor did the officers preserve the currency; instead, the money was

transported to Brinks (a company that receives currency seized by the United States for

forfeiture), counted, and deposited in the Seized Assets Deposit Fund, an account controlled by

the U.S. Marshals.[38]

---

[30] Conrad Dep. 269:11–24.

[31] *Id.* at 269:11–15.

[32] Asset Forfeiture & Money Laundering Section, Crim. Div., U.S. Dep't of Justice *Asset Forfeiture Policy Manual* 157–62 (rev'd ed. Mar. 22, 2014), *available at* http://www.justice.gov/sites/default/files/criminal-afmls/legacy/2014/05/23/policy-manual-2013rev.pdf (last accessed Feb. 25, 2016); *see also* Asset Forfeiture & Money Laundering Sec., Crim. Div., U.S. Dep't of Justice, *Asset Forfeiture Policy Manual* 15, 18, 30 (2007), *available at* https://www.justice.gov/sites/default/files/criminal/legacy/2010/04/11/policy07.pdf.

[33] Office of the U.S. Attorneys, *U.S. Attorney's Manual, Section 9-111.600 - Forfeiture/Seizure* (last updated May 2010), https://www.justice.gov/usam/usam-9-111.000-forfeitureseizure#9-111.600/.

[34] Conrad Dep. at 308:03–10.

[35] Flaherty Decl. Supp. Claimant's Mot. Summ. J. Ex. 1, ECF No. 70-3, Pl.'s Resps. Reqs. Admis. Nos. 23–24; Conrad Dep. 307:18–310:10.

[36] Conrad Dep. 309:14–20.

[37] *Id.* at 310:07–11.

[38] Ex. B, DEA 6 Summary Report, at USA00008 ("On February 19, 2014, TFA Rick Bernecker and TFA William Conrad retrieved [the currency] . . .  and transported it to Brinks Cincinnati where it was

## ARGUMENT

Because the United States failed to preserve the alleged odor of marijuana or the currency to which the dog alerted, it should be sanctioned with either adverse inferences regarding the type and strength of the odor, or exclusion of any testimony regarding this evidence.

## I.   THE UNITED STATES FAILED TO PRESERVE THE LINCHPIN OF ITS FORFEITURE CASE.

Although the United States relies heavily on the claims that Clarke's bags smelled like marijuana and a dog alerted to the seized currency, it failed to preserve these key pieces of evidence.  A spoliation sanction is warranted if a party "knew the evidence was relevant to some issue at trial" and its "culpable conduct resulted in its loss or destruction."  *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (internal quotations omitted).  Because the United States at least negligently failed to preserve relevant evidence, it must be sanctioned for spoliating evidence.

To be awarded sanctions for spoliation, Clarke must establish that:  (1) the United States had an obligation to preserve the evidence at the time it was lost or destroyed; (2) the evidence was destroyed with a "culpable state of mind"; and (3) the destroyed evidence was "relevant" such that a reasonable trier of fact could find that it would support the United States' claim of forfeiture.  *See id.* (adopting standard announced in *Res. Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).  Clarke satisfies all three prongs.  Consequently, this Court must sanction the United States for spoliating evidence.  *See Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013) (cautioning that while district court enjoys discretion in determining the

---

counted and deposited into the U.S. Marshals' account."); Conrad Dep. 236:22–25, 240:04–12; *see also id.* at 38:06–13, 247:04–14 (discussing transporting the money to Brinks); *id.* at 24:24–25:11 (defining Brinks).  *See also* U.S. Dep't of Justice, Off. of the Inspector Gen., Audit of the Assets Forfeiture Fund and Seized Asset Deposit Fund Annual Financial Statements Fiscal Year 2014, at 4 (2015), *available at* https://oig.justice.gov/reports/2015/a1508.pdf#page=1.

kind of sanction, it is error for district court to not grant spoliation sanction "if the movant clearly met all three prongs").

### A.    The United States Had a Duty to Preserve the Odors and the Currency.

The United States had an obligation to preserve the alleged odor of marijuana as well as the defendant currency.  A duty to preserve arises "when a party should have known that the evidence may be relevant to future litigation."  *Beaven*, 622 F.3d at 553; *see also Ohio Cas. Co. v. Cox*, Civ. A. No. 11-334, 2014 WL 5106333, at *6 (E.D. Ky. Sept. 25, 2014) ("A party has an obligation to preserve all evidence that it knows or should know is relevant to any present or future litigation.") (citation and internal quotation marks omitted).

There is no serious question that the United States had a duty to preserve the olfactory evidence and the currency.  *See Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.").  The United States was on notice of the likelihood of litigation because Agent Conrad had seized the currency for administrative forfeiture.  (Conrad Dep. 309:09–13; *see also* 18 U.S.C. § 983(a).)  Thus, it was reasonably foreseeable that Clarke would contest the seizure of his money by filing a claim under the Civil Asset Forfeiture Reform Act,[39] thereby triggering federal judicial review.

Moreover, Agent Conrad conceded that at the time he seized the currency, he viewed the odor of marijuana as material evidence.  (Conrad Dep. 199:17–19 ("The main facts [we]re the K-9 hit, the strong smell.  Everything else was kind of secondary at th[at] point."); *see also id.* at 164:09–16, 174:01–04, 273:24–274:02; Conrad Aff. ¶ 10.)  Specifically, he swore that a "very

---

[39] The Civil Asset Forfeiture Reform Act permits any person to file a claim for property seized in an administrative forfeiture and requires the government to file a complaint for forfeiture within 90 days after a claim has been filed.  18 U.S.C. § 983(a)(2)–(3).

significant" reason for his seizing the currency was the claimed "strong odor" of marijuana. (Conrad Dep. 303:08–11; *see also* Conrad Aff. ¶¶ 3, 10; Aff. Search Warrant at 4.)  In *Byrd v. Alpha Alliance Insurance Corp.*, the plaintiff sued his insurance company for denying his claim for damages from a kitchen fire.  518 F. App'x 380, 382 (6th Cir. 2013).  In trying to inspect his oven's wiring, the plaintiff flipped over the oven with a shovel, shattering the glass-top range. *Id*.  The district court found that the plaintiff had an obligation to preserve the oven's glass-top range because he knew an insurance investigation was pending and was "aware of the oven's importance in determining the fire's cause."  *Id*. at 384.  The court held that a "reasonable insured acting under similar circumstances would have known that the oven may be particularly relevant to future litigation arising out of the fire loss claim."  *Id*.  Just like the oven in *Byrd*, the type and strength of the marijuana odor would be particularly relevant to any future litigation arising out of the seizure of Clarke's currency.  Additionally, Agent Conrad testified that not only did he think it was important to preserve material evidence, but that it was standard operating procedure that he was trained to do.  (Conrad Dep. 269:11–24.)  Moreover, the officers retained the bags until March 13, 2014, giving them adequate opportunity to test the bags for marijuana odor or residue.  Ex. A, Cincinnati/Northern KY Airport Police Incident/Offense Report, at USA00218.

Similarly, the United States had a duty to preserve the currency itself.  The $11,000 seized from Clarke is not merely the *res* at issue in this forfeiture proceeding; it has independent evidentiary value because Agent Conrad's K-9 partner alerted to the presence of narcotics odor on the currency.  And the United States intends to introduce this dog alert as evidence to support its forfeiture claim.  (*See* U.S. Resp. Opp'n Claimant's Mot. Suppress Cell Phone Evidence, ECF No. 76, at 5–6.)  By transferring the bills to Brinks to be deposited in the Seized Assets Deposit

Fund, the United States destroyed critical evidence.  (Ex. B, DEA 6 Summary Report, at USA00008; Conrad Dep. 236:22–25, 240:04–12; *see also id*. at 38:06–13, 247:04–14.)

As with its failure to preserve the alleged odor of marijuana, the Government's failure to preserve the currency contradicts its own policy.  The Attorney General for the United States has established the following policy on handling of seized cash:

> Seized cash, ***except where it is to be used as evidence***, is to be deposited promptly in the Seized Asset Deposit Fund pending forfeiture. The Chief, Asset Forfeiture and Money Laundering Section, may grant exceptions to this policy in extraordinary circumstances. Transfer of cash to the United States Marshal should occur within 60 days of seizure or 10 days of indictment.

Office of the U.S. Attorneys, *U.S. Attorney's Manual, Section 9-111.600 - Seized Cash Management* (updated May 2010) (emphasis added), https://www.justice.gov/usam/usam-9-111000-forfeitureseizure#9-111.600/.  The policy expressly notes that currency should be retained when it "serves a significant independent, tangible, evidentiary purpose due to, for example, the presence of fingerprints, packaging in an incriminating fashion, or ***the existence of a traceable amount of narcotic residue on the bills***." *Id*. (emphasis added).  Here, the dog alert to the currency gives the currency an independent evidentiary purpose.  There is no justification for the Government's destruction of this evidence.  As aptly noted by another federal court in a similar currency forfeiture case involving a dog alert:

> It makes sense, of course, for money to earn interest rather than sitting in the form of bundles of cash in an evidence vault, but the ***government's interest in earning interest on cash, before its lawful ownership*** of that cash has even been established, ***does not justify the destruction of evidence*** that has, or may have, significant probative value.

*United States v. Funds in the Amount of One Hundred Thousand and One Hundred Twenty Dollars ($100,120)*, 127 F. Supp. 3d 879, 888 (N.D. Ill. 2015) (emphasis added).  Thus, the United States had a duty to preserve the actual bills seized from Clarke.

9

The United States knew the importance of the odors and the currency and was thus obligated to preserve them.  *See Ohio Cas. Co. v. Cox*, Civ. A. No. 11-334, 2014 WL 5106333, at *7 (E.D. Ky. Sept. 25, 2014) (finding party had an obligation to preserve evidence when party knew she would be using it to support her contentions and claims).

**B.      The United States Negligently and Knowingly Failed to Preserve Evidence.**

The United States culpably violated its duty to preserve evidence.  It was at least negligent in letting any odor of marijuana dissipate.  Moreover, it knowingly failed to preserve the currency.

Negligent loss of evidence is spoliation.  *Beaven*, 622 F.3d at 554.  Negligence can be inferred from failing to take reasonable steps to preserve evidence that could be at issue in litigation.  For instance, in *Ross v. Home Depot USA Inc.*, a woman tripped on an extension cord at a store.  No. 2:12-CV-743, 2014 WL 2805094, at *1 (S.D. Ohio June 20, 2014).  The store admitted that surveillance camera video footage of the setup of the cord no longer existed.  *Id.* The plaintiffs presented no evidence of bad faith, but the district court still held that the loss of the footage was negligent because "[i]t [was] a fair inference from the record . . . that [the defendant] did not take reasonable steps" to preserve it.  *Id.* at *4.  Similarly, the odor of marijuana was, as conceded by Agent Conrad and Detective Boyd, relevant to the litigation, yet the United States let it waft away.  (Conrad Dep. 308:13–15).  This was at least as negligent as the loss of the video footage in *Ross* and likewise culpable.  *See also Byrd*, 518 F. App'x at 385 ("Destroying evidence known to have some importance to the determination of a fire's cause satisfies the requisite culpability for evidence spoliation.").

Additionally, negligence can be proven through deviation from official policy, as here, where the United States deviated from its own policies to preserve material evidence.  For

example, in *Welsh v. United States*, the Sixth Circuit found that defendants were "at least seriously negligent" in spoliating evidence in a medical malpractice action where their "discarding of the [evidence] was flatly contrary to the requirements of the Joint Commission Manual." 844 F.2d 1239, 1244 (6th Cir. 1988), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009).[40] Similarly here, the United States' failure to preserve the alleged odors or the currency ran contrary to the policies of the Covington Police Department, the DEA, and the Justice Department. (*See* Conrad Dep. at 269:11–24); Asset Forfeiture & Money Laundering Section, Crim. Div., U.S. Dep't of Justice, *Asset Forfeiture Policy Manual* 157–62 (rev'd ed. Mar. 22, 2014), http://www.justice.gov/sites/default/files/criminal-afmls/legacy/2014/05/23/policy-manual-2013rev.pdf (last accessed Feb. 25, 2016); *see also* Asset Forfeiture & Money Laundering Sec., Crim. Div., U.S. Dep't of Justice, *Asset Forfeiture Policy Manual* 15, 18, 30 (2007), *available at* https://www.justice.gov/sites/default/files/criminal/legacy/2010/04/11/policy07.pdf.

With respect to the currency, the United States was more than just negligent. It **knowingly** failed to preserve the currency by transferring it to Brinks and depositing it in the Seized Assets Deposit Fund. *See Beaven*, 622 F. 3d at 554 (treating as culpable destruction of evidence that was done "knowingly, even if without intent to breach a duty to preserve") (internal quotation marks and alterations omitted); (Conrad Dep. at 310:07–11 ("Q . . . . So you did not take any actions to preserve that evidence that you indicated here, you testified here is so core at the time of the seizure of the currency? A Correct.").). *See Jain v. Memphis Shelby Cnty. Airport Auth.*, No. 08-2119, 2010 WL 711328, at *4 (W.D. Tenn. Feb. 25, 2010) (finding

---

[40] Although *Welsh* held that state law applied to spoliation sanctions in federal question cases, it followed federal law after finding lacunae in state law precedent. 844 F.2d at 1245–47. *Welsh*'s holding that state law applied was overruled by *Adkins*, 554 F.3d at 651–52.

defendants' culpability more than negligent but less than intentional where they failed, without explanation, to follow their own procedures for preserving video footage).

Thus, the United States acted culpably under the standard for spoliation.

### C.   The Destroyed Evidence Was Relevant.

Both the alleged odors of marijuana and the currency itself are relevant to a contested issue because a reasonable trier of fact could find that examination of this evidence would support Clarke's defenses.  *See Beaven*, 622 F.3d at 553.[41]

A party acknowledges the potential relevance of evidence by relying on it.  For example, in *Beaven v. United States Department of Justice*, a case alleging a violation of the Privacy Act, a contested issue was whether a folder containing a roster of prison employees and their Social Security numbers, home telephone numbers, pay grades, and other personal information had been left accessible to prisoners.  622 F.3d at 544–45.  While the defendants destroyed the actual folder and claimed it was irrelevant, they used their prior inspection of the folder to argue that no prisoner had actually accessed its contents and therefore there was no unauthorized disclosure under the Privacy Act.  *Id*. at 555.  The Sixth Circuit rejected defendants' attempt to have it both ways, holding that defendants' reliance on the folder demonstrated the folder "was clearly relevant" to the contested issue of whether the folder was disclosed to unauthorized persons.  *Id.*

---

[41]   The relevance standard for spoliation is not strict.  *See, e.g.*, *One Beacon Ins. Co. v. Broad. Dev. Group, Inc.*, 147 F. App'x 535, 541–42 (6th Cir. 2005) ("Courts must take care not to hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence.") (internal quotations omitted) (per curiam).  All that is required is that the lost evidence be potentially relevant.  *Beaven*, 622 F.3d at 555 (noting that the inquiry is simply whether the evidence "would make the existence of a favorable material fact . . . more probable"); *Ross*, 2014 WL 2805094, at *4 ("It cannot be known for certain that [the spoliated footage] was relevant, but it might have been, and that is enough.").  Although there is a chance that, had the evidence been preserved, it would have been favorable to the government, that possibility is immaterial:  "[T]he risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss."  *Ohio Cas. Co.*, 2014 WL 5106333, at *10 (citation omitted).

Similarly, the United States has conceded relevance of the alleged marijuana odors and the currency by relying on this evidence to support forfeiture.  Despite its failure to preserve the odors, the United States has argued that the odor was of raw, not burnt, marijuana.  (U.S. Resp. Opp'n Claimant's Mot. Suppress Cell Phone Evidence, ECF No. 76, at 6–7, 9–10, 14, 17.)  Moreover, it has argued that the odor was so pungent it could only be attributable to a large quantity of marijuana, not a small amount consistent with personal use.  (Conrad Dep. 174:08–19; Boyd Dep. 54:17–22; Aff. Search Warrant at 4; Conrad Aff. at 10.)  Finally, notwithstanding its destruction of the bills seized from Clarke, the United States seeks to introduce evidence of a dog alert on these bills.  The relevance of this evidence "as a confirmatory or testing source, is obvious." *Ohio Cas. Co. v. Cox*, Civ. A. No. 11-334, 2014 WL 5106333, at *7 (E.D. Ky. Sept. 25, 2014).

In sum, the United States culpably destroyed relevant evidence it had a duty to preserve and therefore is subject to sanctions.

## II.   THIS COURT SHOULD DRAW ADVERSE INFERENCES OR EXCLUDE TESTIMONY REGARDING THE DESTROYED EVIDENCE.

This Court has broad discretion to craft a proper sanction for the United States' spoliation of evidence.  *See Adkins*, 554 F.3d at 653 ("[A] district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence.").  The severity of the sanction should correspond to the sanctioned party's degree of fault as well as take into account the facts and evidentiary posture of the case.  *Id*. at 652–53; *Flagg*, 715 F.3d at 178.

> A spoliation sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine and designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party

to the same position [he] would have been in absent the wrongful destruction of evidence by the opposing party.

*Ohio Cas. Co.*, 2014 WL 5106333, at *11 (citation and internal quotation marks omitted).

In light of these rationales, Clarke suggests that a "middle ground" sanction is proper because the United States acted at least negligently in depriving him of any means to test the type or strength of the marijuana odor or test the dog alert to the currency. *See Welsh*, 844 F.2d at 1249 (characterizing middle ground sanction as one that "neither simply condones [a party's] negligent spoliation of evidence at the [opposing party's] expense nor imposes an unduly harsh and absolute liability upon a merely negligent party"). Specifically, Clarke suggests either adverse inferences[42] or, alternatively, preclusion of any testimony regarding the destroyed evidence.[43]

"[W]here one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court should draw the strongest allowable inferences in favor of the aggrieved party." *Id.* at 1247 (quotation omitted). This Court should make the following adverse inferences against the United States:

(i) the odor on Clarke's bags was of burnt—not raw—marijuana;

(ii) the strength of the odor on Clarke's bags was consistent with the personal use of marijuana; and

(iii) the dog alerted to the seized currency because Clarke had smoked marijuana earlier that day.

---

[42] An adverse inference is one that the evidence "would have exposed facts unfavorable to the party" responsible for destroying the evidence. *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013); *see also Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 555 n.11 (6th Cir. 2010) ("The failure or refusal to produce a relevant [piece of evidence] or the destruction of it, is evidence from which alone its contents may be inferred to be unfavorable to the possessor." (citation and quotations omitted)).

[43] The Court may impose any other sanction it deems necessary. *Adkins*, 554 F.3d at 653 ("[I]t is within a district court's inherent power to exercise broad discretion in imposing sanctions based on spoliated evidence.").

*See Beaven*, 622 F.3d at 555 (affirming non-rebuttable adverse evidentiary inference for spoliation where district court judge was the factfinder); *see also Flagg*, 715 F.3d at 177 (failing to impose an adverse inference sanction for spoliation can be reversible error).

Spoliation is presumptively prejudicial, and the United States must win "an uphill battle" to prove otherwise. *See Jain v. Memphis Shelby Cnty. Airport Auth.*, No. 08-2119, 2010 WL 711328, at *2 (W.D. Tenn. Feb. 25, 2010). If the United States cannot overcome this presumption of prejudice, then adverse inferences should be imposed. *Id.* at *3–*4 (imposing adverse inference against defendant for failing to preserve surveillance video even though its police officers reviewed that footage because it prejudiced plaintiff). In *Beaven*—the case in which the defendant destroyed the folder containing personal information of prison employees that may have been left available to prisoners—the Sixth Circuit upheld a non-rebuttable adverse inference that the folder looked compromised because spoliation "depriv[ed] the Plaintiffs of the most relevant piece of evidence to prove their claims." 622 F.3d at 555; *see also Arch Ins. Co. v. Broan-NuTone, LLC*, 509 F. App'x 453, 457 (6th Cir. 2012) (unpublished op.) (upholding adverse-inference sanction in product-liability action when defendant was prejudiced by plaintiff negligently destroyed ceiling exhaust fan/light fixture, preventing defendants from testing the fixture); *Wiseman v. Lipinski*, No. 3:10-0250, 2012 WL 928739, at *3 (M.D. Tenn. Mar. 19, 2012) (finding prejudice where plaintiff could not "inspect, test or show" the main physical evidence in the case, and imposing an adverse inference sanction).

Here, the United States' destruction of the alleged odors as well as the currency has deprived Clarke the necessary evidence to corroborate his account that he had smoked marijuana earlier that day and rebut the government's assertions. The United States failed to seize and seal the bags and send them to a laboratory to test for odor or residue. (Conrad Dep. 308:07–10.)

15

The federal reporters are replete with legions of cases in which law-enforcement officers have conducted additional testing to verify olfactory evidence.[44]  Nor did the officers take any steps to preserve the currency.  (Conrad Dep. at 236:22–25, 240:04–12.)  "[B]ut the best evidence as to whether the currency was contaminated with illegal drugs would be derived from testing the currency itself—testing that was never done and now cannot be done because the government intentionally failed to preserve the currency."  *United States v. Funds in the Amount of One Hundred Thousand and One Hundred Twenty Dollars ($100,120)*, 127 F. Supp. 3d 879, 888 (N.D. Ill. Feb. 11, 2015).  Thus, Clarke was prejudiced by being denied important physical evidence that he could have tested.

It is worth noting that the United States only introduced this distinction between raw and burnt marijuana odor during the depositions of Detective Boyd and Agent Conrad in late January

---

[44] *United States v. Williams*, No. 15-5080, 2016 WL 424594, at *5 (6th Cir. Feb. 4, 2016) (noting that laboratory testing came back negative for a substance that an officer thought smelled so strongly of cocaine that he went back and retested it himself, and to which a dog had alerted); *United States v. Dye*, 538 F. App'x 654, 658 (6th Cir. 2013) (unpublished op.) (noting that testing confirmed a gasoline odor on the clothing of a firebombing suspect); *United States v. Smith*, 456 F. App'x 572, 573 (6th Cir. 2012) (unpublished op.) (noting that police field-tested a substance alerted to by a dog to confirm that it was heroin); *Anderson v. Trombley*, 451 F. App'x 469, 486 (6th Cir. 2011) (unpublished op.) (noting that a substance both smelled like cocaine and tested positive); *United States v. Franklin*, 298 F. App'x 477, 478 (6th Cir. 2008) (unpublished op.) (noting that chemical tests confirmed a strong gasoline odor on the clothing of an arson suspect); *United States v. Bryant*, 206 F. App'x 535, 537 (6th Cir. 2006) (unpublished op.) (noting that police lab-tested a substance smelling like methamphetamine to confirm its nature); *United States v. Linton*, No. 89-1383, 899 F.2d 15, at *1 (6th Cir. 1990) (unpublished op.) (noting that police tested powder smelled by an officer to determine that it was amphetamine); *United States v. Rodriguez*, 596 F.2d 169, 173–74 (6th Cir. 1979) (noting that the police took a package, "smelled it, tested it and believed, but could not prove scientifically, that it was narcotics. They took it with the carrier's permission to the police station for further tests"); *Smith v. Berghuis*, No. 10-12562, 2013 WL 1858549, at *1 (E.D. Mich. May 2, 2013) (unpublished op.) (noting that a rag smelling of "a flammable liquid accelerant" was tested to confirm that it was gasoline); *Muntian v. Therrien*, No. 1:11-CV-515, 2012 WL 2367856, at *2 (W.D. Mich. June 21, 2012) (unpublished op.) (noting that officers field-tested a leafy substance found in a house smelling strongly of burnt marijuana to confirm that it was marijuana); *United States v. Youngblood*, No. 05-80810, 2006 WL 1984054, at *1 n.1 (E.D. Mich. July 13, 2006) (unpublished op.) (noting that police lab-tested a box containing a substance looking and smelling like eleven pounds of marijuana to confirm that it was indeed marijuana); *United States v. Hampton*, No. 1:05-CR-166, 2005 WL 3555507, at *5 (W.D. Mich. Dec. 27, 2005), *aff'd sub nom.*, *United States v. Yarbrough*, 272 F. App'x 438 (6th Cir. 2007) (noting that police field-tested a substance in a vehicle outside a home smelling like marijuana to confirm that it was marijuana).

16

2016—more than two years after the seizure.  This fact was not contained in Detective Boyd's affidavit for a search warrant executed the day after the seizure, in any of the contemporaneous reports made about the seizure (*see* Ex. A, Cincinnati/Northern KY Airport Police Incident/Offense Report; Ex. B, DEA 6 Summary Report); or even in Agent Conrad's April 2014 affidavit in support of the verified complaint for forfeiture.  Neither did counsel for the United States mention this distinction during the November 3, 2015 hearing, even when the Court mentioned that possibility that the dog alerted because Clarke had been smoking marijuana earlier that day.  (Tr. Nov. 3, 2015 Oral Arg. before the Honorable William O. Bertelsman, ECF No. 53, at 11:03–07.)  "[E]xplanations offered for the first time in litigation ought to come with a truth-in-litigating label, requiring the official to disclose whether the new explanations motivated the [party] at the time of decision or whether they amount to post hoc rationalizations."  *Haight v. Thompson*, 763 F.3d 554, 562 (6th Cir. 2014) (finding significant that government officials' reasons for challenged action was only part of litigation record, not the underlying record memorializing the officials' decision-making process); *see also United States v. Virginia*, 518 U.S. 515, 533 (1996) (observing that government's justification for its actions "must be genuine, not . . . invented post hoc in response to litigation").  Allowing the United States the benefit of introducing this post-hoc, unrebuttable evidence would grant the United States an undeserved windfall.

Alternatively, Claimant requests this Court preclude all testimony by the United States regarding the type or strength of the odor of marijuana, as well as the dog alert to the seized currency.  *See Ohio Cas. Co.*, 2014 WL 5106333, at *11 (precluding spoliator "from in any way using, referencing, or relying on [spoliated evidence]" as a sanction).

In sum, an adverse inference or preclusion of testimony would "level[] the evidentiary playing field and . . . sanction[] the improper conduct" and thereby "serve both fairness and punitive functions." *Adkins*, 554 F.3d at 652 (citing *Vodusek v. Bayliner Marine Corp.*, 71 F. 3d 148, 156 (4th Cir. 1995)).

## <u>CONCLUSION</u>

This Court should sanction the United States for spoliating evidence by drawing the following adverse inferences:

(i)  the odor on Clarke's bags was of burnt—not raw—marijuana;

(ii) the strength of the odor on Clarke's bags was consistent with personal use of marijuana; and

(iii) the dog alerted to the seized currency because Clarke had smoked marijuana earlier that day.

Alternatively, the Court should preclude the United States from in any way using, referencing, or relying on the odor of marijuana or the dog alert on the currency, and grant any other relief it deems appropriate.

Respectfully submitted,

/s/  *Darpana M. Sheth*
Darpana M. Sheth*
Renée D. Flaherty*
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone:  (703) 682-9320
Fax:      (703) 682-9321
Email:  dsheth@ij.org
            rflaherty@ij.org
*Admitted pro hac vice*

Christopher D. Wiest (KBA 90725)
Chris Wiest, Attorney at Law, PLLC
25 Town Center Blvd., Suite 104
Crestview Hills, KY 41017
Mobile:  (513) 257-1895

Fax:      (859) 495-0803
Email:  chris@cwiestlaw.com

*Attorneys for Claimant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of April, 2016, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF CLAIMANT'S MOTION FOR SPOLIATION SANCTIONS** was served upon the CM/ECF system, which will provide notice of service upon all counsel and attorneys of record.


/s/ *Darpana M. Sheth*
Darpana M. Sheth

20